(February 27, 1911.)

## THE FIRST NATIONAL BANK OF MOSCOW, a Corporation, Plaintiff, v. THE REGENTS OF THE UNIVERSITY OF IDAHO, a Corporation, and THE STATE OF IDAHO, Defendants.

[113 Pac. 735.]

Application for Recommendatory Judgment.

(Syllabus by the court.)

1. The plaintiff bank loaned to Colson & Sons, who had the contract for the construction of the foundation of the Administration Building of the University of Idaho, $7,500. Said construction contract was forfeited and the Board of Regents completed the contract. It does not appear from the evidence introduced at the hearing that said $7,500, or any part thereof, was expended by Colson & Sons on said foundation. *Held,* that the evidence fails to establish any liability on the part of the Board of Regents to or in favor of the bank, or any liability on the part of the state to the bank for the money so loaned Colson & Sons.

2. *Held,* that said claim should be recommended to the legislature for payment.

Original proceeding in this court for a recommendatory decision. *Denied.*

C. J. Orland and G. G. Pickett, for Plaintiff; authorities cited in brief in *Moscow Hardware Co. v. Regents, ante,* p. 420.

D. C. McDougall, Attorney General, J. H. Peterson and O. M. Van Duyn, Assistants, for Defendants, cite no authorities.

SULLIVAN, J.—This is an action brought by the First National Bank of Moscow, as plaintiff, against the Regents of the State University of Idaho, a corporation, and the state of Idaho. After alleging the incorporation of the plaintiff as a national bank, and alleging that the Regents of the University of Idaho is a body corporate and existence

as such body, and that the state of Idaho is a sovereign state, it is alleged that on or about the 10th day of October, 1906, the Regents of the State University entered into a contract in writing with Colson & Sons whereby they agreed to furnish the material and do the work in the building and construction of a foundation for a certain building for said defendant corporation to be known and called the Administration Building of the University of Idaho, at the city of Moscow, and for which material, work and labor the said Board of Regents agreed to pay $24,535, together with further sums of money for certain other work and material, at certain rates, depending upon the amount of such labor and material, a copy of which contract is attached to and made a part of the complaint. It is further alleged that Colson & Sons, on account of the entering into and the executing of said instrument in writing, and in pursuance of its terms, commenced to furnish material and do work upon said foundation for said Administration Building, and in so doing furnished and supplied a large amount of material and did a large amount of work upon said foundation, all of which was done with the knowledge, consent and approval of said Board of Regents, and each member thereof, and under the direction, control and supervision of the architect and superintendent of said Board of Regents; that said Colson & Sons continued to work upon said foundation and furnish material therefor for a period of about four months, and all with the knowledge, consent and approval of said board, and under its direction, supervision and control; that during the continuance of said work, the architect and superintendent made several estimates of the amount and value of the labor done and of the material furnished in the construction of said foundation, as a basis upon which the Board of Regents should pay Colson & Sons as the work progressed and the material was furnished; that said estimates of work and material were filed with the defendant board and audited and allowed by it in the sum of $6,917.35, and that warrants were ordered drawn for the same and warrants upon the treasurer of said defendant were drawn

in favor of Colson & Sons in the sum of $4,186.38; that said warrants have never been delivered to Colson & Sons nor to any other person for them, and plaintiff alleges that said Board of Regents have retained said warrants and all of them in its possession; that a large sum of money in excess of the sum for which said warrants were drawn was due and owing from said Board of Regents to Colson & Sons, and that the defendants have failed, neglected and refused to pay the same; that on or about February 13, 1907, the said Board of Regents directed and ordered that said Colson & Sons stop work upon said foundation and to cease and abandon work thereon; that upon the receipt of said order, said Colson & Sons ceased work and did not deliver further material for or on account of said foundation, and on the said 13th day of February, quit and abandoned said work and have never done any other or further work thereon; that said Colson & Sons had, on or about the 13th of February, 1907, performed work upon said foundation and furnished material for the same of a total value of $10,000, all of which was done under the direction and superintendence of the defendant board and with its knowledge and consent; that said Board of Regents received, approved and accepted such work and material; that said defendants, nor either of them, have paid for said labor and material, nor for any part thereof, but appropriated the same to their own use and benefit without paying for the same or any part thereof, and that there is now due from defendants for said labor, work and material the sum of $10,000; that on the 24th day of November, 1906, the said Colson & Sons, for value received, made, executed and delivered to the plaintiff an assignment and order upon said Board of Regents to deliver all warrants issued by it in payment of said work and material, and notice thereof was immediately given to the said Board of Regents; that on the 11th day of February, 1907, the said Colson & Sons sold and assigned to the plaintiff all of their claims against the defendants for work and material furnished by them for said foundation. Then follows a copy of said assignment.

It is alleged that the plaintiff is the owner and holder of said assignment and has been since the date of its execution; that said Board of Regents refused to allow or pay said claim, and rejected the whole thereof; that said claim was presented to the State Board of Examiners of the state of Idaho and that the said State Board of Examiners did on or about the 7th day of April, 1910, refuse to allow the same or any part thereof; that there has at no time been a final estimate of the value of the work done or of the value of the material used in the construction of said work by said Colson & Sons upon said foundation by the architect or superintendent; that said final estimates have not been made because of and on account of the neglect and design of the said Board of Regents in attempting to hinder and delay any settlement or payment of the demands of the said Colson & Sons; that on the 22d day of October, 1906, the plaintiff loaned the said Colson & Sons the sum of $2,000, and on the 7th day of January, 1907, the sum of $5,201, and on the 11th day of January, 1907, the sum of $200, and on the 1st day of February, 1907, the sum of $99, all of which said sums of money bear interest from the date of the loan at the rate of ten per cent per annum, and that the plaintiff loaned said money to Colson & Sons to the amount of $7,500, and the sum is now due and owing this plaintiff, together with accrued interest thereon, all of which sum was used and paid out by the said plaintiff and the said Colson & Sons for labor and material which was done and furnished in the construction of said foundation, and the said money was furnished by the plaintiff to said Colson & Sons in reliance upon the payment of said labor and material by the defendant board as it agreed to do, and the representations of the agents and officers of said defendants that the terms and conditions of the contract had been and were being complied with by said Colson & Sons, and that said contract for the construction was a valid and subsisting agreement between the parties thereto; that for the purpose of securing the payment of said money so loaned to Colson & Sons, they sold, assigned and transferred their said claims

and demands against the said Board of Regents to the plain-
tiff, and that plaintiff is now the owner of said claims; that:
said regents have a large sum of money in their possession
and under their control subject to and properly applicable
to the payment of said claims; that said Colson & Sons de-
posited with the Board of Regents the sum of $500 at the
time of entering into said contract, and that defendants:
have at no time ever accounted for said sum, but have kept
and appropriated the same to their own use and benefit, and
that said money is properly applicable for the payment of
the said claim of the plaintiff, and that the regents' deten-
tion of said money is without right; that said Board of
Regents ordered said Colson & Sons to cease work and the
furnishing of material for said foundation, and after it had
refused to pay for the work and material upon the esti-
mates of its said superintendent as it promised to do, the
said Board of Regents took charge of the work and pro-
ceeded to complete said foundation, and in so doing made
various changes in the plans of the foundation, which in-
creased the expense and cost of such foundation over what
it would have been under the plans under which Colson &
Sons agreed to do said work; and that the completion of
said work as done by said board was done in an extravagant,
expensive and unworkmanlike manner, and at a greatly in-
creased cost over the reasonable and necessary cost of doing
the same, all of which cost and increased expense so incurred
was by reason of a change of plans and by the extravagant.
and incompetent manner in which the completion of the
work was done; that by reason of such expensive, incom-
petent and extravagant manner in which the completion
of the said foundation was done, the said defendants have
attempted to cheat, wrong and defraud the said plaintiff out
of a large sum of money which might have been properly
applied to the payment of the claims, and this plaintiff prays
for an advisory judgment of this court to the effect, first, that
the defendant, the Board of Regents of the University of
Idaho, pay to the said plaintiff any and all sums of money
which it may have in its possession and under its control, sub-

ject to the payment of said claims; second, for the sum of $2,000, with interest thereon from October 22d, 1906; third, for the sum of $5,201, with interest thereon from January 7, 1907; fourth, for the sum of $200, with interest thereon from January 11, 1907; fifth, for the sum of $99, with interest thereon from February 1st, 1907, and, sixth, for any and all money which may be found due and owing to said Colson & Sons to an amount equal to plaintiff's claims assigned to plaintiff, and for such other and further relief as the plaintiff is entitled to.

To this complaint defendants filed an answer denying on information and belief nearly all of the material allegations of the complaint.

Upon the issues thus made this court appointed a referee to take the testimony in the case. The refereee reported to this court, and thereafter arguments were made by respective counsel and the matter taken under advisement by the court.

It appears from the record that before any testimony was taken, a stipulation was entered into in regard to certain allegations in the complaint. It was stipulated that no question should be raised by either party as to the Regents of the University being a corporation; that the Regents of the University on February 13, 1907, directed and ordered the said Colson & Sons to stop work upon said foundation, and that they did quit work and had furnished no material and had done no work since that date; that said regents rejected and refused to allow any part of the claims herein involved about the 8th of February, 1910, and on the 7th day of April, 1910, the State Board of Examiners refused to make any recommendation in regard to the payment of said claim.

Thereupon evidence was introduced by the respective parties.

It appears from the evidence that on October 10, 1906, the Board of Regents entered into a written contract with Colson & Sons for the furnishing of the material and doing of the work for the construction of the foundation of the Administration Building of the University of Idaho, for the consideration of $24,535. In addition to said price it was provided in

such contract that Colson & Sons should do the work of excavating for said foundation at the rate of twenty-two cents per cubic yard, excavating for drain ditches at the rate of thirty-five cents per cubic yard, for furnishing tile, etc., and laying and covering the same, seventy-five cents per lineal foot, all of which was extra work and not provided for in the price of $24,535, but to be paid in addition to that price. Under said contract Colson & Sons were to give bond for the faithful performance thereof, in the sum of $———, which they failed to give. The regents, however, permitted them to go on with the work from the 10th of October, 1906, until the 13th of February, 1907, and then annulled and set aside the contract and refused to permit them to proceed with the work because they had not furnished said bond.

Under the provisions of said contract, eighty per cent payments for the work and material were to be made by the regents from time to time as the work proceeded, upon the estimates of the architect. In pursuance of said estimates by the architect, the Board of Regents allowed and approved of such estimates and in accordance therewith, on November 26, 1906, prepared and signed warrants on the treasurer of the board for the sum of $1,123.68; December 22, 1906, warrant for $874.70; December 31, 1906, warrant for $1,452.50; January 28, 1907, warrant for $214.70; January 31, 1907, warrant for $520.80, making a total of $4,186.38 in warrants drawn under said contract, which amount is but eighty per cent of the work done and materials furnished according to said estimates.

It also appears that these warrants were placed in the hands of Mr. Jenkins, bursar of the university, for delivery to Colson & Sons. On each of said warrants was indorsed the following: "This certificate is not to be honored until complete approval of the contractors' bond is obtained." The contractors' bond never having been given or approved, said warrants were never delivered to Colson & Sons, and some time thereafter said warrants were all canceled by the president of said Board of Regents, M. E. Lewis.

It appears that during the time that said Colson & Sons were at work under said contract, the plaintiff bank loaned them $7,500, and it is contended on the part of the plaintiff that the state secured the benefit of said $7,500, in that it was paid to laborers and materialmen for labor performed and material furnished to Colson & Sons in the prosecution of their work under their contract for the construction of said foundation, and that as the state had thus received the benefit of it, the plaintiff was entitled to recover at least the amount represented by said warrants that were issued and. thereafter canceled, amounting to $4,186.38, and also the sum of $550 which had been deposited with the regents by Colson & Sons as a guaranty for the execution of said contract in accordance with its terms. It is also contended by the plaintiff that it is shown by the evidence that Colson & Sons had performed work and furnished material in the construction of said foundation to the amount of $7,845.76 at the time they were ordered to quit work. After Colson & Sons quit work, the regents completed the work by day labor, without letting any contract. Said regents knowing that the plaintiff claimed any sum of money which might be due and owing to said Colson & Sons for work and material furnished by them in the construction of said foundation, on or about the 26th of August, 1909, transmitted to plaintiff a statement of the account between the regents and Colson & Sons for the completion of said foundation. By that statement it is contended by counsel for plaintiff that it is shown that there is a balance due Colson & Sons after the completion of the foundation by the regents under the contract, of $5,512.16; that in said statement there has been charged against Colson & Sons for old bricks, $652.20, when, as a matter of fact, the regents were to furnish the brick themselves, and it is contended that said $652.20 should be added to the sum of $5,512.16, thus making a total due to Colson & Sons of $6,164.36.

At the hearing before the referee, the regents introduced a statement in which it is shown that the amount expended by them after the cancellation of the Colson & Sons contract

was $24,976.14. This deducted from the total cost of the work, over which there is no dispute ($31,071.15), leaves $6,095.01. But it is contended by counsel for plaintiff that there is at least one item of $70.96 for drain to the foundation that should not have been charged to Colson & Sons under the contract, which, added to $6,095.01, would amount to $6,165.97.

What we have said with reference to the liability of the Board of Regents to pay claimants for material and furnishings in the case of the *Moscow Hardware Co. v. Regents etc., ante,* p. 420, 113 Pac. 731, decided at this January, 1911, term of court is applicable here, but the trouble in this case is that we have no evidence before us which establishes the fact or would support a finding that the $7,500 loaned by the bank to Colson & Sons was actually used in the construction of this building. The proof does not establish that it was paid to either laborers or materialmen. On the contrary, the money was paid by the bank directly to Colson & Sons on their checks, and the cashier of the bank, Mr. Payne, said on the witness-stand that he could not say where the money went or that any of it went into this building. It is clear, therefore, that the bank loaned the money directly to Colson & Sons on their own account and responsibility, and that this was purely a personal and private transaction between the bank and Colson & Sons. The evidence, as the same is presented to us, fails to establish any indebtedness or liability on the part of the Board of Regents to or in favor of the bank, or any liability on the part of the state to the bank.

For the foregoing reasons, we must decline to render a recommendatory decision in this case.

The question of the original jurisdiction of this court in this case has not been raised, but what we have said with reference to the question of jurisdiction in the case of the *Moscow Hardware Co. v. Regents etc., ante,* p. 420, 113 Pac. 731, just decided, is applicable in this case, and is reaffirmed here.

Ailshie, J., concurs.

STEWART, C. J.—I agree with the conclusion reached in the majority opinion to the effect that the evidence in this case does not show that the money loaned by the First National Bank to Colson & Sons was actually used in the construction of the building under construction by the Regents of the State University, and for that reason that the state is in no way liable to the bank for the amount of such loan; that under the evidence, such loan was made directly to Colson & Sons on their own account and responsibility, and was a personal and private transaction between the bank and Colson & Sons, and for that reason the court should recommend a judgment to the legislature that the state is not liable and that the claim be not paid; and I dissent from that reference made in the opinion to what has been said in the majority opinion in the case of *Hardware Co. v. Regents,* just decided, with reference to the jurisdiction of this court to hear claims against the state.