(February 22, 1921.)

STATE, on the Relation of ROY L. BLACK, Individually and as Attorney General of the State of Idaho, Plaintiff, v. STATE BOARD OF EDUCATION and THE BOARD OF REGENTS OF THE UNIVERSITY OF IDAHO, a Body Corporate, and RAMSAY M. WALKER, J. A. LIPPINCOTT, EVAN EVANS, LOTTIE M. GRAVELEY, IRVIN E. ROCKWELL and ETHEL M. REDFIELD, as Members Thereof, and FRANK N. STANTON, Bursar of the University of Idaho, Defendants.

[196 Pac. 201.]

STATE UNIVERSITY—CONSTITUTIONAL STATUS—CONTROL OF FUNDS—EXPENDITURES—LEGISLATIVE REGULATIONS—STATE APPROPRIATIONS—PROCEEDS FROM FEDERAL GRANTS, APPROPRIATIONS AND PRIVATE DONATIONS—CONTROL OF BOARD OF EXAMINERS—CONTROL OF DEPARTMENT OF PUBLIC WORKS—SALES OF UNIVERSITY PROPERTY.

1. The board of regents of the University of Idaho is a constitutional corporation with granted powers, and while functioning

within the scope of its authority is not subject to the control or supervision of any other branch, board or department of the state government, but is a separate entity, and may sue and be sued, with power to contract and discharge indebtedness, with the right to exercise its discretion within the powers granted, without authority to contract indebtedness against the state, and in no sense is a claim against the regents one against the state.

2. A claim against the University of Idaho or the board of regents thereof is not a claim against the state. Const., art. 4, sec. 18, and C. S., sec. 242, confer upon the state board of examiners no power to pass upon claims against the board of regents of the state university.

3. Const., art. 9, sec. 10, vests in the board of regents of the University of Idaho, "the general supervision of the university, and the control and direction of all the funds of, and appropriations to, the university, under such regulations as may be prescribed by law." The regulations which may be prescribed by law and which must be observed by the regents in their supervision of the university, and the control and direction of its funds, refer to methods and rules for the conduct of its business and accounting to authorized officers. Such regulations must not be of a character to interfere essentially with the constitutional discretion of the board, under the authority granted by the constitution.

4. The proceeds of federal land grants, direct federal appropriations, and private donations to the university, are trust funds, and are not subject to the constitutional requirement that money must be appropriated before it is paid out of the state treasury. Claims against such funds need not be passed upon by the state board of examiners, and the moneys in such funds may be expended by the board of regents, subject only to the conditions and limitations provided in the acts of Congress making such grants and appropriations, or the conditions imposed by the donors upon the donations.

5. When a constitutional provision or legislative act is fairly open to two constructions, one of which will carry out and the other defeat some great public purpose for which it was designed, the former construction should be applied.

6. When an appropriation of public funds is made to the university, the legislature may impose such conditions and limitations as in its wisdom it may deem proper. If accepted by the regents, it is coupled with the conditions and can be expended only

6. Right to use public funds for purpose other than that of appropriation, see note in Ann. Cas. 1917B, 864.

for the purposes and at the time and in the manner prescribed, and can be withdrawn from the state treasury only as provided by law.

7.    The powers and duties of the department of public works, under C. S., secs. 367–380, pertain only to such contracts or purchases as create claims against the state.

8.    There is no obligation resting upon the board of regents of the state university to pay to the state treasurer the proceeds of the sale of property belonging to the university in the absence of conditions contained in an appropriation which, by being accepted, raised an implied contract on the part of such board, and said proceeds of sale may be paid to the treasurer of the state university for the use thereof.

Original application for writ of prohibition. *Denied.*

Roy L. Black, Attorney General, and Dean Driscoll, Assistant, for Plaintiff.

So far as any of these funds constitute trust funds, or moneys held by the state for a specific purpose and no other, irrespective of any constitutional proviso giving the board of regents any power over them, they would, by reason of their character as trust funds alone, be not subject to the constitutional provision requiring appropriation and requiring allowance of claims against them by the board of examiners. (*State v. Iverson,* 125 Minn. 67, 145 N. W. 607; *Commonwealth v. Dollar Savings Bank,* 259 Pa. 138, 102 Atl. 569, 1 A. L. R. 1048; *State v. Taylor,* 33 N. D. 76, Ann. Cas. 1918A, 583, 156 N. W. 561, L. R. A. 1918B, 156; *State v. McMillan,* 36 Nev. 383, 136 Pac. 108; *State v. Collins,* 21 Mont. 448, 53 Pac. 1114.)

The funds derived from the various land grants are trust funds. Not only are they permanent funds in the control of the state, and hence in the control of the state treasurer, but the proceeds will be available in such manner only as the legislature shall make them so. (*Evans v. Van Deusen,* 31 Ida. 621, 174 Pac. 122.)

Direct federal appropriations require no appropriation or action from the state legislature, are not subject to the

custody of the state treasurer and may be expended without any action of the board of examiners. (*Melgard v. Eagleson*, 31 Ida. 411, 172 Pac. 655.)

The provision of art. 3, sec. 1, vesting the entire legislative power of the state in the Senate and House of Representatives, seems quite inclusive in its terms. There is no exception as to the state board of regents, or appropriations made in their favor. The mere creation of the office of the state treasurer makes him, under the decisions of this court, custodian of all the state funds. There is nothing in the constitution which makes any exception as to appropriations for the university. The construction placed upon the constitutional provision for a board of examiners by the decisions of this court seems to be equally ironclad. (*Pyke v. Steunenberg*, 5 Ida. 614, 51 Pac. 614; *Bragaw v. Gooding*, 14 Ida. 288, 94 Pac. 438.)

There is language in the section creating the board of regents (art. 9, sec. 10) under which all these various provisions can be given force and effect.

"The regents shall have the general supervision of the university and the control and direction of all funds of, and appropriations to the university, under such regulations as may be prescribed by law." This section originally gave the regents exclusive control and direction in express words, but after considerable debate in the convention, the word "exclusive" was stricken out. (1 Ida. Const. Convention, 766–772.)

Conflicting or apparently conflicting statutes will be construed, if possible, to give effect to both. (*Brown v. Bryan*, 6 Ida. 1, 51 Pac. 995; *Noble v. Bragaw*, 12 Ida. 265, 85 Pac. 903; *Olson S. L. R. Co. v. Minidoka Co.*, 28 Ida. 214, 153 Pac. 424; *Oneida Co. v. Evans*, 25 Ida. 456, 138 Pac. 337; *Perrault v. Robinson*, 29 Ida. 267, 158 Pac. 1074.)

It is not competent for the state board of regents, who are simply state officers, to divest either the attorney general or the county attorneys of their lawful duties and deprive them of the control of litigation which the law places in their hands. (Secs. 178, 3655, C. S.)

Henry Z. Johnson, O. P. Cockerill and Oppenheim & Lampert, for Defendants.

All the rights, immunities, franchises and endowments granted by the territorial legislature are perpetuated unto the state university under the control of the board of regents as a constitutional corporation. (Const., art. 9, sec. 10; *Trapp v. Cook Const. Co.*, 24 Okl. 850, 105 Pac. 667; *Sterling v. Regents of University of Michigan*, 110 Mich. 369, 68 N. W. 253, 34 L. R. A. 150.)

The state board of examiners has jurisdiction only of claims against the state. (Const., art. 4, sec. 18; C. S., sec. 242.)

A claim against the board of regents of the University of Idaho is not a claim against the state. (*Pyke v. Steunenberg*, 5 Ida. 614, 51 Pac. 614; *Hollister v. State*, 9 Ida. 8, 71 Pac. 541; *American Bonding Co. v. Regents*, 11 Ida. 63, 81 Pac. 604; *Moscow Hardware Co. v. Regents*, 19 Ida. 420, 113 Pac. 731; *First Nat. Bank v. Regents*, 19 Ida. 440, 113 Pac. 735; *First Nat. Bank v. Regents*, 26 Ida. 19, 140 Pac. 771; *Phoenix Lumber Co. v. Regents*, 197 Fed. 425; *Interstate Construction Co. v. Regents*, 199 Fed. 509.)

A claim is the equivalent of a cause of action. (*Houston v. State*, 98 Wis. 481, 74 N. W. 111, 42 L. R. A. 39; *Northwestern & Pacific Hypotheek Bank v. State*, 18 Wash. 73, 50 Pac. 586, 42 L. R. A. 33; *Riddoch v. State*, 68 Wash. 529, Ann. Cas. 1913E, 1033, 123 Pac. 450, 42 L. R. A., N. S., 251; *Miller v. Village of Mullen,* 17 Ida. 28, 19 Ann. Cas. 1107, 104 Pac. 660; C. S., sec. 4048; *Giffen v. Lewiston*, 6 Ida. 231, 55 Pac. 545.)

The legislature cannot "regulate" from the board of regents powers conferred by the constitution. (*Finlen v. Heinze*, 27 Mont. 107, 69 Pac. 829; *Blomquist v. County Commrs.*, 25 Ida. 284, 137 Pac. 174; *State v. Hastings*, 10 Wis. 525; *Trapp v. Cook Construction Co., supra; Wineberg v. Regents*, 97 Mich. 246, 56 N. W. 605; *Sterling v. Regents, supra; Fox v. Flynn*, 27 Ida. 580, 150 Pac. 44; *Bauer v. State Board of Agriculture*, 164 Mich. 415, 129

N. W. 713; *Regents v. Auditor,* 167 Mich. 444, 132 N. W. 1037; *State Board of Agriculture v. Fuller,* 180 Mich. 349, 147 N. W. 529; *State v. Board of Curators,* 268 Mo. 598, 188 S. W. 128.)

General statutory provisions do not derogate from or restrict specific powers conferred upon the regents of the University of Idaho. (*State v. Clausen,* 51 Wash. 548, 99 Pac. 743; *State v. Carr,* 111 Ind. 335, 12 N. E. 318.)

Various funds have been given to the state by the federal government for educational purposes. The state has accepted these funds and designated the university as the beneficiary. In accepting the funds and designating the university as the beneficiary thereof, the funds become trust funds under the control and direction of the regents, and any claim arising against the fund or funds does not create a claim against the state, but a claim only against the fund itself or against the regents. (*Melgard v. Eagleson,* 31 Ida. 411, 172 Pac. 655; *People v. Davenport,* 117 N. Y. 549, 23 N. E. 664; *State v. Cook,* 17 Mont. 529, 43 Pac. 928; *State v. Collins,* 21 Mont. 448, 53 Pac. 1114.)

If we interpret the phrase "claims against the state" as used in art. 4, sec. 18, as not including claims against the regents, then there is no conflict either in the statutes or the separate provisions of the constitution. This we submit is the usual and ordinary method of construing statutory language. If these provisions may be interpreted so as not to conflict, it is the court's duty to so interpret.

"This rule is applicable with special force to written constitutions, in which the people will be presumed to have expressed themselves in careful and measured terms." (Cooley, Const. Lim., 92.)

BUDGE, J.—This is an original action in this court for a writ of prohibition by the state, upon the relation of the attorney general. It is sought to prohibit the state board of education, acting as the board of regents of the University of Idaho, from pursuing a course of conduct and from doing

certain specific acts in furtherance thereof. The sufficiency of the petition is attacked by general demurrer.

The course of conduct on the part of the regents sought to be prohibited is set forth in a resolution passed by them October 1, 1920, as follows:

"The State Board of Education and Board of Regents of the University of Idaho being in session and a quorum being present and the affairs of the University of Idaho being under consideration, the following preamble and resolutions were submitted, and on motion duly seconded were carried unanimously.

"WHEREAS, Under Article IX, Section 10, of the Constitution of the State of Idaho, the Board of Regents of the University of Idaho have not only the general supervision of the university but the control and direction of all the funds of, and appropriations to, the University, subject only to such reasonable regulations as may be prescribed by law; and ·

"WHEREAS, By the same article and section, the Constitution perpetuated in the Board of Regents all the rights, immunities, franchises and endowments prescribed by the then existing laws of the territory of Idaho, which included all the powers necessary or convenient for carrying out the purposes of the University, as defined in the act of the territorial legislature approved January 30, 1889; and

"WHEREAS, Various state officers, and particularly the State Board of Examiners, the State Treasurer, the State Auditor and the Department of Public Works, acting as a purchasing bureau for the state, have interpreted their duties as prescribed by the legislature so as to infringe upon and limit the Board of Regents in the exercise of its constitutional duties to the detriment of the welfare of the University; and

"WHEREAS, The Board of Regents denies that a claim against the University is a claim against the State of Idaho and subject to the regulations prescribed for the latter; and

"WHEREAS, The Board of Regents denies the authority of the legislature, under the guise of 'regulations,' to deprive

the said Board, which is a co-ordinate constitutional body of the state government, of the absolute exercise of full discretionary powers in the purchase and sale of property, and the employment of services, or to interfere in any way with the expenditure of the funds belonging to the University; and

"WHEREAS, The Board of Regents denies that in the expenditure of the funds received under direct or indirect grants from the Federal government, or from funds received for services rendered, or from the sale of any property belonging to the institution, it is under any legal obligation to submit to the Board of Examiners for examination and approval claims against the University which are to be paid from the said funds; and

"WHEREAS, The Board of Regents denies that the legislature has authority under the Constitution to require it, or any of its agents, to pay into the state treasury the proceeds of any sales or rentals or moneys received for services, or any other moneys coming into its possession from any source whatsoever.

"Now, THEREFORE, BE IT RESOLVED by the State Board of Education and Board of Regents of the University of Idaho, that the said Board when acting as Regents of the University is a constitutional corporation having exclusive supervision of the University and the exclusive control and direction of all the funds of, and appropriations to, the University.

"RESOLVED, That the executive officers of the Board of Regents and of the University be and hereby are instructed to act in accordance with the spirit of this resolution and in subordination alone to the Board of Regents, and without regard to any pretended legislation infringing upon the constitutional rights and duties of the Board.

"Specifically:

"The Board of Regents of the University hereby directs the executive officers and agents not to pay into the State Treasury moneys coming into the hand of its treasurer, or

other agent, any pretended law to the contrary notwithstanding.

"The Board of Regents directs its executive officers and agents, upon the sole authorization of this Board, to buy or purchase anything necessary to carry out the purposes of the act creating the institution, any pretended legislative acts to the contrary notwithstanding.

"The Board of Regents will demand of the State Auditor and Treasurer the payment from time to time of the proceeds of the interest on the endowment funds and rentals of endowment lands on claims of the University against the state for such funds and not upon the vouchers of individual claimants against the University.

"RESOLVED, That the bursar of the University be and he is hereby directed to pay to the treasurer of the University, and to refuse to pay to the State Treasurer, any and all moneys received from the sale and rental of property of the University; and moneys received for services and from other sources.

"RESOLVED, That the bursar be and he is hereby authorized to voucher against the moneys so deposited with the treasurer of the University any claims against the University which may be properly paid therefrom, without submitting such claims to the Board of Examiners of the State.

"RESOLVED, That whereas there has been sold to the Preston Machine Co. of Moscow two condemned boilers, the payment for which has been received and is now in the custody of the bursar of the University, Frank M. Stanton; the said bursar, Frank M. Stanton be and hereby is directed to disregard the provision of the statute directing this money to be paid to the State Treasurer, and instead to pay the same to the treasurer of the University.

"RESOLVED, That the bursar be and he is hereby authorized to let printing contracts and to purchase necessary supplies and apparatus, without requisitioning the Department of Public Works, acting as state purchasing agent for the state of Idaho, and to pay for the same without submitting the vouchers therefor to the Board of Examiners;

but in letting said contracts and in making said purchases and in drawing vouchers therefor, said bursar shall be subject only to such rules and regulations as may be prescribed by the Board of Regents.

"RESOLVED, That the bursar is hereby directed to purchase from Julia A. Moore, of Moscow, Idaho, a certain tract of land necessary for agricultural experimentation, . . . . And to pay therefor a sum not to exceed $100, one-half of said purchase price to ·be paid upon execution and delivery of the deed by warrant upon the treasurer of the University, without submitting the voucher for the payment of said sum to the Board of Examiners of the state for allowance; the balance of said purchase price to be paid six months from the date of the execution of said deed by warrant upon the treasurer of the University, without submitting the voucher for the payment of said sum to the Board of Examiners of the state for allowance.

"RESOLVED, That the bursar of the University be and hereby is directed to submit from time to time vouchers to the State Auditor suitable for the payment to the University of the proceeds of the interest endowment fund arising from the sale or rental of University lands, agricultural college lands, and scientific school lands, which may be in the State Treasury.

"RESOLVED, That the executive officers of the Board are hereby authorized to employ counsel to aid in the enforcement of this resolution and the establishment in court of the constitutional rights of this Board; also to employ accountants or auditors to determine the correct amount of public funds heretofore deposited in the State Treasury or derived from the sale of University lands for which the State is indebted to the Regents."

The specific acts complained of are as follows: The regents, having received $75 from the sale of a discarded boiler belonging to the university, will pay the same to the treasurer of the university instead of the treasurer of the state, in alleged violation of sec. 1 of the general appropriation bill for 1919, Sess. Laws 1919, pp. 304, 305.

The regents will pay claims against the university out of funds in the hands of the state treasurer without submitting them for allowance by the state board of examiners.

In particular, they propose the purchase of lands on a time contract for university needs, without specific authorization by the board of examiners, in alleged violation of sec. 4, Sess. Laws 1919, p. 309.

The regents will make purchases of supplies and enter into contracts for printing on behalf of the university without requisition upon and without the consent or action of the commissioner of public works of the state, in alleged violation of C. S., sec. 367, which provides that: "The Department of Public Works shall have power . . . . 3. To procure and supply all furniture, general office equipment, and general office supplies . . . . needed by the several state departments."

The regents will continue to employ attorneys when necessary to represent the interests of the university, instead of relying upon the constitutional law officer of the state, whose duty it is to represent all executive departments of the state government.

By an act of the legislature of the territory of Idaho approved January 30, 1889 (Ter. Sess. Laws, 1888–89, p. 21), the University of Idaho was established at the town of Moscow, and its government was vested in a board of regents to be appointed by the Governor. "The Board of Regents," it was provided, "shall constitute a body corporate, by the name of 'The Regents of the University of Idaho,' and shall possess all the powers necessary or convenient to accomplish the objects and perform the duties prescribed by law, and shall have the custody of the books, records, buildings and other property of said University." The board elects its own president, secretary and treasurer, whose duties are similar to those of corresponding officers in private corporations. By-laws may be adopted by the board, prescribing specific rules for the conduct of its officers and fixing the amount of the treasurer's bond. It was also vested with power to enact laws for the government of

the university, to make expenditures for the erection of suitable buildings, and for the purchase of apparatus and library, and to employ and discharge professors and instructors. "The treasurer of said board," the act provides, "shall, out of any moneys in his hands belonging to said Board, pay all orders drawn upon him by the President and Secretary thereof, when accompanied by vouchers fully explaining the character of the expenditure." At the close of each fiscal year, the regents, through their president, are required to report in detail to the Governor the progress, conditions and wants of the university, the amount of receipts and disbursements, and such other information as they may deem important.

This act was amended by Sess. Laws 1899, p. 392, sec. 2, by extending the terms of the regents from two to six years; by Sess. Laws 1901, p. 15, reducing the number of regents from nine to five; and by implication by Sess. Laws 1913, p. 328, which latter act created the state board of education, "which shall also constitute the Board of Regents of the University," and provided, in sec. 3, that said state board of education and board of regents "shall have control of all moneys so appropriated." Sess. Laws 1891, p. 42, and 1893, p. 48, amended the provisions of the act of 1889 relating to the annual levy for the university building fund. With the exception of these amendments, the constitutionality of which is not involved, the act of 1889 has not been altered, and was the only law in force when art. 9, sec. 10, of the constitution was adopted.

Art. 9, sec. 10, permanently located the university in Moscow, and confirmed unto the said university all the rights, immunities, franchises and endowments theretofore granted thereunto by the territory of Idaho, and perpetuated the same unto the university, giving to the regents, then consisting of nine members, "the general supervision of the university, and the control and direction of all of the funds of, and appropriations to, the university, *under such regulations as may be prescribed by law.*"

With the italicized provision omitted, the similar constitutional provisions of the states of Michigan and Minnesota are essentially the same as art. 9, sec. 10, of our constitution. Construing the Michigan constitutional provision, the supreme court of Michigan said: "It is made the highest form of juristic person known to the law, a constitutional corporation of independent authority, which within the scope of its functions is co-ordinate with and equal to that of the legislature." (*Board of Regents v. Auditor*, 167 Mich. 444, 132 N. W. 1037.)

The regulations which may be prescribed by law and which must be observed by the regents in their supervision of the university, and the control and direction of its funds, refer to methods and rules for the conduct of its business and accounting to authorized officers. Such regulations must not be of a character to interfere essentially with the constitutional discretion of the board, under the authority granted by the constitution.

It is admitted by the attorney general, and we think correctly so, that the proceeds of federal land grants, direct federal appropriations, and private donations to the university, are trust funds, and are not subject to the constitutional requirement that money must be appropriated before it is paid out of the state treasury. Claims against such funds need not be passed upon by the board of examiners, and the moneys in such funds may be expended by the board of regents subject only to the conditions and limitations provided in the acts of Congress making such grants and appropriations, or the conditions imposed by the donors upon the donations. (*Melgard v. Eagleson*, 31 Ida. 411, 172 Pac. 655; *Evans v. Van Deusen*, 31 Ida. 614, 174 Pac. 122.)

If a claim against the regents is a claim against the state, it must be presented to the board of examiners for approval. The supreme court has original and exclusive jurisdiction to hear claims against the state, which have been disallowed in whole or in part by the board of examiners. There is no other authority in the constitution or statutes authorizing an

action against the state, and such authority must be so expressed.

Const. art. 4, sec. 18, is as follows: "The Governor, Secretary of State and Attorney General . . . . shall also constitute a Board of Examiners with power to examine all claims against the State except salaries or compensation of officers fixed by law . . . . "

Const. art. 5, sec. 10, provides: "The Supreme Court shall have original jurisdiction to hear claims against the State, but its decision shall be merely recommendatory; no process in the nature of execution shall issue thereon. They shall be reported to the next session of the Legislature for its action."

That an action may be maintained in the district court on a claim against the board of regents and that court has jurisdiction, and the supreme court is without original jurisdiction, has been frequently held, and is well settled as the law of this state.

In *Thomas v. State,* 16 Ida. 81, 100 Pac. 761, it is held that: "The district court has no jurisdiction of an action against the state which involves a claim against the state, such jurisdiction being vested in the supreme court under article 5, section 10, of the constitution."

*American Bonding Co. v. Regents,* 11 Ida. 63, 81 Pac. 604, was an action commenced in the district court and appealed to the supreme court, where a judgment in favor of the board of regents was affirmed.

*Moscow Hardware Co. v. Regents,* 19 Ida. 420, 113 Pac. 731, was an action for a recommendatory judgment brought originally in the supreme court, and this court of its own motion in the course of its opinion says: "It is clear that this court has no jurisdiction to render a recommendatory judgment herein" (p. 430). To the same effect is *First Nat. Bank v. Regents,* 19 Ida. 440, 113 Pac. 735.

That a claim against the regents is not a claim against the state is finally disposed of in *First Nat. Bank of Moscow v. Regents,* 26 Ida. 15, 140 Pac. 771, in the following language:

"There is no merit in the contention that the district court was without jurisdiction, and that the only jurisdiction to hear this case was in the supreme court. . . . . The doctrine there announced (*Moscow Hardware Co. v. Regents and First Nat. Bank v. Regents, supra*), is sound and consonant with the provisions of the constitution and statutes and is affirmed in so far as it applies to the board of regents of the state university."

This necessarily follows for the reason that the board of regents is a constitutional corporation with granted powers, and while functioning within the scope of its authority, is not subject to the control or supervision of any other branch, board or department of the state government, but is a separate entity, and may sue and be sued, with power to contract and discharge indebtedness, with the right to exercise its discretion within the powers granted, without authority to contract indebtedness against the state, and in no sense is a claim against the regents one against the state.

To hold that art. 4, sec. 18, of the constitution, and C. S., sec. 242, confer upon the board of examiners power to pass upon claims against the board of regents would make the latter board subservient to the former, and in the final analysis would operate to deprive the board of regents of the control and direction of the funds of and appropriations to the university.

When a constitutional provision or legislative act is fairly open to two constructions, one of which will carry out and the other defeat some great public purpose for which it was designed, the former construction should be applied.

"This rule is applicable with special force to written constitutions in which the people will be presumed to have expressed themselves in careful and measured terms, . . . . One part may qualify another so as to restrict its operation, or apply it otherwise than the natural construction would require if it stood by itself; but one part is not to be allowed to defeat another, if by any reasonable construction the two can be made to stand together." (Cooley's Constitutional Limitations, 7th ed., p. 92.)

Bearing this principle in mind, we interpret the phrase "claim against the state" as used in art. 4, sec. 18, as not including claims against the regents, and there is, therefore, no conflict either in the statute or these separate provisions of the constitution.

When an appropriation of public funds is made to the university, the legislature may impose such conditions and limitations as in its wisdom it may deem proper. If accepted by the regents, it is coupled with the conditions, and can be expended only for the purposes and at the time and in the manner prescribed, and can be withdrawn from the state treasury only as provided by law.

The board of regents may purchase property without compliance with the provisions of C. S., secs. 367–380. The power and duties of the department of public works could pertain only to such contracts or purchases as create claims against the state.

If the regents have funds available for the purpose of making purchases of supplies, they may do so without requisition upon and without the consent of the commissioner of public works, and if they have money which is available for the purchase of land, or the payment of counsel fees, or to employ accountants and auditors, other than state accountants and auditors, we know of no valid reason why they should not do so. This in no way would involve the power of the legislature to provide that the accounts and records of the regents shall also be examined and audited by regular accountants and auditors of the state.

In the absence of conditions contained in an appropriation which, by being accepted, raised an implied contract on the part of the board of regents, there is no obligation resting upon them to pay to the state treasurer the proceeds of the sale of property belonging to the university. The same may be paid to the treasurer of the university.

The writ will be denied, and it is so ordered.

Rice, C. J., and McCarthy and Lee, JJ., concur.

DUNN, J., Dissenting in Part.—I concur fully in the decision of the majority of the court that claims against the state university or the board of regents are not required to be submitted to the state board of examiners, and that to require such claims to be submitted to said board would make it possible for the board of examiners to take away from the board of regents the power and authority granted by art. 9, sec. 10, of the state constitution, but I am not able to accept their conclusion that such claims are not claims against the state.

My opinion that such claims are claims against the state is based upon the following grounds:

1. The constitution imposes on the legislature the duty of supporting the university.  (Art. 10, sec. 1.)

2. The uniform course of the state in dealing with the university during the thirty-two years of that institution's existence in providing its funds and discharging its obligations.

3. The state university has no funds except such as are provided by the state.

4. The constitution recognizes no distinction between the university and other state institutions as to their duty to account for moneys received from the state and as to the authority of the Governor to investigate their condition and require reports.

It seems beyond question to me that the claims being discussed in this case must be held to be against the one by whose authority and for whose benefit they are created, and whose duty it is to provide the means for payment.

Art. 10, sec. 1, state constitution, provides: "Educational, reformatory, and penal institutions, and those for the benefit of the insane, blind, deaf and dumb, and such other institutions as the public good may require, shall be established and supported by the state in such manner as may be prescribed by law."

This provision includes the university and in obedience thereto the state legislature every two years since the found-

ing of that institution has provided support for it as well as for the normal schools, the Idaho Technical Institute, the insane asylums, the penitentiary, and all other state institutions. It lays upon the legislature a continuing duty to provide such support so long as this section of the constitution remains, and there can be no doubt that the legislature will continue to provide such support in such amounts as that body finds necessary, considering the requirements of the school and the financial condition of the state, these being matters in which the judgment of the legislature is supreme.

The board of regents and the university are without means to meet the expenses of the university, except as such means are supplied by the state. It is conceded that claims payable out of the federal income of the university need not be submitted to the board of examiners, and that in this case we are considering only appropriations made by the legislature.

The constitution recognizes no distinction between the university and other state institutions as to their duty to account for moneys received from the state, and the authority of the Governor to investigate their condition, management and expenses and require sworn reports from those in charge.

Art. 4, sec. 8, state constitution, reads: ''The Governor . . . . may also require information in writing, at any time, under oath, from all officers and managers of state institutions, upon any subject relating to the condition, management and expenses of their respective offices and institutions, and may at any time he deems it necessary, appoint a committee to investigate and report to him upon the condition of any executive office or state institution.''

Art. 4, sec. 17, state constitution, reads: ''An account shall be kept by the officers of the executive department and of all public institutions of the state, of all moneys received by them severally, from all sources, and for every service performed, and of all moneys disbursed by them severally, and a semi-annual report thereof shall be made

to the Governor, under oath; they shall also, at least 20 days preceding each regular session of the legislature, make full and complete reports of their official transactions to the Governor, who shall transmit the same to the legislature.''

These provisions, which include the university, can be explained only on the theory that the persons in charge of all state institutions are transacting the state's business and spending the state's money, and that the claims that they are paying from time to time are claims against the state.

The question whether claims against the university are claims against the state has never been directly passed upon by this court. The decision in the case of *Bank v. Regents,* 26 Ida. 15, 140 Pac. 771, relied on by the majority, shows on its face that it is in substance only a recommendatory judgment. It suggests that the claim there established might, if not paid by the regents, be presented to the legislature. It may well be asked what right the legislature would have to allow it if it were not a claim against the state. If it were not a claim against the state, why should the judgment of this court have been only recommendatory?

If I correctly understand the majority decision, it rests upon these propositions: That this court has exclusive jurisdiction to hear claims against the state; that claims against the university must first be heard in the district court, and therefore such claims are not claims against the state.

Art. 5, sec. 10, of the constitution says: ''The supreme court shall have original jurisdiction to hear claims against the state, but its decisions shall be merely recommendatory.''

In the case of *Thomas v. State,* 16 Ida. 81, 100 Pac. 761, this court held that it had exclusive jurisdiction to hear such claims, and the majority opinion in the case at bar follows that holding. But this holding can be sustained only by reading into that clause the word ''exclusive,'' which is not written there.

If the language quoted above means that this court has exclusive jurisdiction to hear claims against the state, what does the very same language mean in art. 5, sec. 9, which says: ''The supreme court shall also have original jurisdic-

tion to issue writs of *mandamus, certiorari,* prohibition and *habeas corpus''?* This clause is held by this court to mean that it has jurisdiction concurrent with the district courts to issue these writs, and it refuses, very properly, to exercise its original jurisdiction to issue such writs except in extraordinary cases. There can be no question that the construction given to sec. 9 is right, and if so, that given to sec. 10 must be wrong.

It does not appear reasonable that it was intended to burden this court in the first instance with all of the trifling controversies that might arise over claims against the state, presented to the board of examiners and disallowed, if claimants should decide to sue. According to the majority, such cases must be tried here. Otherwise their reasoning with regard to the university claims must fall.

The majority opinion says that it necessarily follows that claims against the regents are not claims against the state, "for the reason that the board of regents is a constitutional corporation, with granted powers, and while functioning within the scope of its authority is not subject to the control of any other branch, board or department of the state government, but is a separate entity, and may sue and be sued, with power to contract and discharge indebtedness, and with the right to exercise its discretion within the powers granted, without authority to contract an indebtedness against the state.''

But these are not marks that distinguish the board of regents from the respective boards that control the other state institutions. For instance, the board of prison commissioners is a constitutional body having "control, direction and management of the penitentiaries of the state." (Art. 10, sec. 5.) The board of directors of the asylum for the insane is a constitutional body having "control, direction and management'' of the asylums. (Art. 10, sec. 6.) In addition to these general powers the constitution gives these two governing boards certain specific powers. The powers of these two boards, being constitutional, are certainly equal in rank with those of the board of regents,

though not so in extent. But these two boards and the state board of education, in exercising the powers conferred by the legislature, have the power to contract and discharge indebtedness. None of them have any authority to contract indebtedness against the state except when expressly empowered by the legislature, but in this respect they do not differ from the executive and judicial branches of the state government. The state board of education may sue and be sued. All of them have certain discretionary powers.

It seems to me that the board of regents and all the other bodies mentioned are simply agencies established by the state for the purpose of carrying on certain business of the state, and that in determining whether claims against the university or the other institutions are claims against the state, it is immaterial whether the governing body is a corporation or not, or whether such body is of constitutional or statutory origin.

The constitution of this state contains art. 4, sec. 18, and art. 9, sec. 10. These were inserted in that instrument at the time it was framed. They read:

Art. 4, sec. 18: "The Governor, Secretary of State and Attorney General shall . . . . constitute a board of examiners, with power to examine all claims against the state, except salaries or compensations of officers fixed by law, and perform such other duties as may be prescribed by law."

Art. 9, sec. 10: "The location of the University of Idaho, as established by existing laws, is hereby confirmed. All the rights, immunities, franchises, and endowments, heretofore granted thereto by the territory of Idaho are hereby perpetuated unto the said university. The regents shall have the general supervision of the university, and the control and direction of all the funds of, and appropriations to, the university, under such regulations as may be prescribed by law. No university lands shall be sold for less than ten dollars per acre, and in subdivisions not to exceed one hundred and sixty acres, to any one person, company or corporation."

Art. 4, sec. 18, is a general provision written without specific reference to any department of the state government.

Given its most comprehensive meaning, it would include claims against the university, which are claims against the state. But this clause must be construed in connection with art. 9, sec. 10, which was written at the same time with special reference to a particular subject. This provision conferred on the university and the board of regents all the rights, powers and privileges claimed for them in the majority opinion. To hold that claims against the university must be submitted to the board of examiners would completely nullify art. 9, sec. 10. To hold that claims against the university, which are claims against the state, are not, by reason of art. 9, sec. 10, to be submitted to the board of examiners would simply reduce by that much the number of claims to be submitted to that board, but would leave it in the full exercise of all its powers as to other claims against the state.

This, it seems to me, is far more reasonable and less dangerous than reading into the constitution the word ''exclusive'' and thus by construction extending the jurisdiction of this court.

I agree with the majority that the regents are not required to buy supplies for the university through the department of public works.

In my opinion, when an appropriation is made to the university for a specific purpose, it must be used for that purpose and no other. If after it has been used for such purpose the property purchased with such appropriation is no longer needed, it may be sold and the proceeds again used in harmony with the original purpose of the appropriation. But if such receipts are to be used for an entirely different purpose, the money must be returned to the state, to which it belongs, and again appropriated by the legislature. Any other course would open the way for serious irregularities and abuses.