

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

JOHN BEN SHEPPERD
ATTORNEY GENERAL

September 2, 1955

Honorable John H. Winters          Opinion No. S-172
Executive Director
State Department of Public Welfare  Re:  Eligibility of employ-
Austin, Texas                            ees of State institu-
                                         tions of higher learning
                                         for Social Security
Dear Mr. Winters:                        coverage.

You have requested an opinion on the following questions:

"1. Are the employees (including those subject
to the Teacher Retirement System) of the University
of Texas and the other State administered institu-
tions of higher learning eligible for Social Secur-
ity coverage under the definition as set out in
Section 1, Subsection (c) of House Bill No. 666,
Chapter 467, Acts of the 54th Legislature, and,
therefore, must be mandatorily included along with
other eligible State employees?

"2.  Are the employees (including those subject
to the Teacher Retirement System) of the University
of Texas and other State administered institutions
of higher learning eligible for Social Security
coverage under the terms of Sections 1 and 2 of
House Bill No. 709, Chapter 501, Acts of the 54th
Legislature?

"3.  Are the employees (excluding those subject
to the Teacher Retirement System) of the University
of Texas and the other State administered institu-
tions of higher learning eligible for Social Security
coverage under the terms of Sections 1 and 2 of House
Bill No. 709?

"4.  If your opinion or ruling to question number
2 is affirmative, then is there a specific appropria-
tion for the matching contributions?  If so, is such
appropriation provided for in House Bill No. 666?

"5. If, in your opinion, the University of Texas and other State administered institutions of higher learning are not instrumentalities of the State and are not juristic entities, and therefore do not come under provisions of House Bill No. 709; and if in your opinion they are not State institutions in the usual meaning, then would their employees (excluding those subject to the Teacher Retirement System) come under the provisions of House Bill No. 666 for mandatory coverage?"

House Bill 666 authorizes the State Department of Public Welfare to enter into agreements with the Secretary of Health, Education and Welfare to obtain Federal old-age and survivors insurance (hereinafter called OASI) coverage for State employees. Section 1, Subsection (c) of House Bill 666 defines the term "State employee" as follows:

"(c) The term 'State employee' in addition to its usual meaning shall include elective and appointive officials of the State, but shall not include those persons rendering services in positions, the compensation for which is on a fee basis. The term 'State Employee' shall not include any employees in position subject to the Teachers Retirement System except those employed by State departments, State agencies, and State institutions as construed in their usual meaning."

Section 6 of House Bill 666 provides for the collection of contributions. It makes provision for deduction of the employees' part from the employees' compensation and for allocation and appropriation of funds for payment of the State's part of the contribution for employees who are subject to coverage under the provisions of the bill.

House Bill 709 amends Sections 1 and 4 of Chapter 500, Acts of the 52nd Legislature, Regular Session, 1951 (Article 695g, Vernon's Civil Statutes), which allows political subdivisions to negotiate for OASI coverage for their employees. Section 1 of the bill adds a new subdivision to Section 1 of Article 695g so as to extend the definition of "political subdivision" as follows:

"(h) The term 'political subdivision' includes an instrumentality of the State, of one or more of its political subdivisions, or of the State and one or more of its political subdivisions, but only if such instrumentality is a juristic entity which is

legally separate and distinct from the State or subdivision and only if its employees are not by virtue of their relation to such juristic entity employees of the State or subdivision."

Section 2 of the bill adds the following provision to Section 4 of Article 695g:

". . . . Any instrumentality of the State, for which direct appropriations are made by the Legislature, may contribute to the old-age and survivor's insurance program of the Federal Government for employees covered by Chapter 470, Acts, 1937, Forty-fifth Legislature, Regular Session, and amendments thereto, only such funds as are specifically appropriated therefor."

Chapter 470 referred to above is the act establishing the Teacher Retirement of Texas (Article 2922-1, V.C.S.).

It is obvious from an analysis of the provisions of these two bills that State institutions of higher learning cannot be included in both bills. If these institutions are instrumentalities of the State within the definition contained in House Bill 709, their employees necessarily are not covered by House Bill 666, since one of the conditions for coverage under House Bill 709 is that the employees not be "employees of the State" and House Bill 666 applies only to State employees. On the other hand, if these institutions are not legal entities separate and distinct from the State, the logical conclusion would be that their employees are State employees and that House Bill 666 was intended to apply to them.

House Bill 666 does not contain a basic definition for the term "State employee." It sets out certain classes of persons who are included and certain classes who are excluded, and it presupposes that when modified by these inclusions and exclusions the term shall have its "usual meaning"; but it does not attempt to clarify what the usual meaning is in terms of the departments and agencies whose employees are considered to be State employees. However, we are aided in this respect by the Federal Social Security Law, which authorizes contracts for coverage of State employees who are performing services in connection with a governmental (nonproprietary) function[1] only if

---

[1] The operation of institutions of higher education by the State is a governmental function. Rainey v. Malone, 141 S.W.2d 713 (Tex.Civ.App. 1940).

the contract applies to all departments and agencies of the State which are not separate legal entities. Under Federal law the State may exclude certain classes of employees within these departments and agencies, but it may not exclude the department or agency as such. Thus, House Bill 666 conforms to Federal law only if the over-all meaning of "State employee" without the enumerated modifications includes employees of the State institutions of higher learning if these institutions are not separate legal entities. In the absence of proof to the contrary, it must be assumed that the term was not intended to have a more restricted meaning than would be permitted under the Federal law, for otherwise the enactment of House Bill 666 would have been an idle gesture.

Undoubtedly the State institutions of higher learning are instrumentalities of the State in the broad sense that they are the means through which the State carries on one of the functions of government. However, they are included in House Bill 709 only if they meet the conditions (1) that they are separate and distinct juristic entities and (2) that their employees are not employees of the State. It is our opinion that they do not meet either of these conditions.

There is no definitive criterion for determining whether an instrumentality is a separate legal entity. An instrumentality which is created as a corporate body or as a "body politic and corporate" ordinarily would be considered to have a legal existence separate from the State, although it might still possess some of the attributes of the State's sovereignty. It does not follow that an instrumentality which is not expressly created as a corporate body could not constitute a separate juristic entity, but the law establishing it would have to imply its separate existence before it should be treated as such. That the legal status of an institution of higher learning depends on the status ascribed to it by State law is illustrated in Ramsey v. Hamilton, 181 Ga. 365, 182 S.W.392,398 (1935). In some States these institutions are organized as bodies corporate and are regarded as independent legal entities. State ex rel. Black v. State Board of Education, 33 Idaho 415, 196 Pac. 201 (1921); Fanning v. University of Minnesota, 183 Minn. 222, 236 N.W. 217 (1931). In other States, they are not legal entities. Ramsey v. Hamilton, supra; State v. McMillan, 12 N.D. 280, 96 N.W. 310, 316 (1903).

The institutions of higher learning in this State are not corporate bodies, and the courts have never treated them as separate entities. The organization and powers of the governing boards of the various institutions are sufficiently similar that their status in this respect is no different from that of

the University of Texas. The relation of the University to the State is exemplified in the following cases.

In Group No. One Oil Corporation v. Bass, 38 F.2d 680, 684 (W.D.Tex.1930,rev'd on other grounds, 141 F.2d 483), it is stated:

"The university is not a corporation. Its affairs are directed and controlled exclusively by the state. The title to what is commonly called university lands is in the State. Appropriations for maintenance and operation are regularly made by the Legislature. The university is in fact and in law a branch of the state government."

Rainey v. Malone, 141 S.W.2d 713 (Tex.Civ.App.1940), held that the Regents of the University are "officers of the State" and that the Board is the "head of a department of the State Government."

In Walsh v. University of Texas, 169 S.W.2d 993 (Tex. Civ.App.1942,error ref.), we find this language:

"The University and the Board of Regents are institutions of the State, and neither has any existence independent of the State. . . . Property belonging to the University of Texas is the property of the State. York v. Alley, Tex.Civ.App., 25 S.W.2d 193, writ refused."

In our opinion, these holdings foreclose any contention that the State institutions of higher learning have any existence separate from the State itself. We are further of the opinion that employees of these institutions are employees of the State. The purpose of adding this second condition is obscure. If the instrumentality has no existence separate from the State, it would seem to follow that under ordinary conditions of employment its employees would be employees of the State. However, the fact that this second condition was added in House Bill 709 suggests that the converse would not be true; that employees of a separate entity would not as a necessary consequence be outside the class of "employees of the State" but still might be considered State employees for the purpose of OASI coverage. If this provision appeared in a statute for coverage of State employees as well as employees of separate instrumentalities and the statute contained a comprehensive definition of the term which included the employees of some instrumentalities which were separate entities, we would think that its purpose was merely

to emphasize that instrumentalities were to have the authority to make separate agreements only if their employees would not be covered under an agreement for coverage of State employees generally. If House Bill 666 contained such a definition, we would conclude that the same meaning was intended in House Bill 709, since the statutes are in pari materia. But House Bill 666 does not assist in arriving at the intended meaning, and we must conclude that the term is to be construed in the manner in which it is commonly used and understood by the Legislature in other connections.

In numerous places in the general provisions of the biennial appropriation acts the Legislature uses the term "employees of the State" or comparable terms to include employees of the institutions of higher learning. Section 62 of Article XVI of the Constitution authorizes the creation of a retirement fund for the "appointive officers and employees of the State." The employees of the institutions of higher education are ineligible for membership in the Employees Retirement System of Texas, created pursuant to this constitutional authorization, only because they are subject to the Teacher Retirement System and the State laws do not permit membership in both systems. Before the Teacher Retirement System was extended to include auxiliary employees of educational institutions, it was conceded that these employees were eligible for membership in the Employees Retirement System because of their status as "employees of the State." It is our belief that the term as generally used by the Legislature would be taken to include employees of these institutions unless a contrary intention was clearly shown.

Since these institutions are not instrumentalities as defined in Section 1 of House Bill 709, your second and third questions are answered in the negative. We need not answer your fourth question, as the restriction in Section 2 of House Bill 709 applies only to instrumentalities which are within the definition in Section 1 of the bill. Even if it were construed to apply to other instrumentalities, the specific appropriation for these institutions would be found in House Bill 666, under the conclusion we have reached in answer to your first question as hereinafter discussed.

As already indicated, it is our opinion that the employees of these institutions are included in the general term "State employee" in House Bill 666, since the institutions are not separate legal entities. The remaining question is whether the employees who are in positions subject to the Teacher Retirement System are excluded, under the provision which states that the term shall not include employees in positions subject to the Teacher Retirement System "except those employed by State departments, State Agencies, and State institutions as construed in their usual meaning."

Without evidence that the usual meaning as intended in House Bill 666 was otherwise, we must conclude that the meaning usually given the terms by the Legislature and the courts was that intended by the bill. The courts have held that the institutions of higher learning are State institutions and departments of the State government. Rainey v. Malone, supra; Walsh v. University of Texas, supra; Mumme v. Marrs, 120 Tex. 383, 40 S.W.2d 31 (1931); Cochran v. Cavanaugh, 252 S.W.284 (Tex.Civ.App.1923). Throughout the statutes pertaining to their establishment, the collection of fees and the administration of funds collected by them, we find them referred to as institutions, State educational institutions, and institutions of higher education. Title 49, Chaps. 2 - 9a, V. C. S. Article 608, V. C. S., which places in the Board of Control the authority to contract for printing, binding, and stationery for the State departments, institutions and boards except such work as may be done at the various educational and eleemosynary institutions, includes contracts for the institutions of higher learning. Att'y. Gen. Op. 0-5283 (1943). In the biennial appropriation acts they are referred to as State institutions of higher education, State institutions, educational institutions, and agencies of higher education.

The hospitals and special schools under the control of the Board for State Hospitals and Special Schools and certain agencies under the jurisdiction of the State Board of Education and the State Department of Public Welfare are also referred to as "institutions" in the statutes, and were formerly known under the official designation of "eleemosynary institutions" until changed by the Legislature in 1949. Arts. 3174, 3174a, 3174b, V. C. S. The schools under the jurisdiction of the Youth Development Council were formerly referred to in the appropriation acts as "reformatory institutions" and are sometimes known as "correctional institutions." Each of these agencies is an institution of a specialized character, just as the institutions of higher learning are of a specialized character. We cannot say that the usual meaning does not include institutions of higher learning with any more reason than we could say that it does not include eleemosynary institutions.

In answer to your first and fifth questions, we hold that the employees of these institutions, including those subject to the Teacher Retirement System, are eligible for OASI coverage under House Bill 666.

It might be urged that this construction of the last sentence in Subsection (c) renders it meaningless and unnecessary in that there would be no State employees subject to the Teacher Retirement System who would be excluded. A similar contention might be made with respect to the provision in Section

2 of House Bill 709. To paraphrase language in <u>Hurt v. Cooper</u>, 130 Tex. 433, 110 S.W.2d 896 (1937), we need not indulge in any speculation on what agencies or instrumentalities, if any, come within the terms of these provisions. However, these and other provisions in the bills raise ambiguities which would justify a consideration of their legislative history to clarify the intent of the Legislature in enacting them. But the legislative history as revealed in the official records throws no light on the agencies to which they were intended to apply.

We have been seriously hampered in our study of these questions by the lack of a record of committee hearings and deliberations and debates in the Legislature. There are strong indications from extraneous sources that the sponsors of House Bill 709 believed and represented to the Legislature that it applied to the institutions of higher learning; that the sponsors of House Bill 666 believed and represented to the Legislature that it excluded employees of the institutions of higher learning who were subject to the Teacher Retirement System; and that the Legislature enacted the bills in the belief that it would not be possible for the employees of these institutions who were covered by the Teacher Retirement System to be included in any contract for Social Security coverage until the Legislature took further action to appropriate money for payment of the contributions. In this connection, the adoption of Senate Joint Resolution 5, Senate Bill 290, and Senate Concurrent Resolution 78 form a part of the background necessary to an understanding of what may have been the legislative intent with respect to the coverage of employees subject to the Teacher Retirement System.

If these surmises were borne out by legislative records and reports, the conclusions we have reached on some of the questions would be different. But we have not felt at liberty to be influenced by information from sources which a court would refuse to consider if these questions were before it. It is our belief, from a review of the decisions of this State and elsewhere, that the courts of Texas would not allow evidence of opinions and statements of members of the Legislature and third persons outside the official records of the Legislature to show a legislative intent at variance with the language used in the enactments. See, for example, <u>Wiseman v. Madison Cadillac Co.</u>, 191 Ark.1021, 88 S.W.2d 1007 (1935); <u>Security Feed & Seed Co. v. Lee</u>, 138 Fla. 592,189 So. 869 (1939); <u>Ocean Forest Co. v. Woodside</u>, 184 S.C.428,192 S.E.413 (1937); <u>State v. Bushfield</u>, 69 S.D.172, 8 N.W.2d 1 (1943); <u>City of Spokane v. State</u>, 198 Wash. 682, 89 P.2d 826 (1939); <u>Papke v. American Automobile Ins. Co.</u>, 248 Wis. 347, 21 N.W.2d 724 (1946); 82 C.J.S., Statutes, Secs. 354,355,356. On the basis of the language employed and the legislative history of the bills as shown by the official records, we are unable to reach any other answers than the ones we have given.

SUMMARY

State institutions of higher learning are State institutions in the usual meaning of that term, and their employees are State employees. Therefore, employees of these institutions, including employees in positions subject to the Teacher Retirement System, are eligible for Federal old-age and survivors insurance (Social Security) coverage under House Bill 666, Chapter 467, Acts of the 54th Legislature, which provides for coverage of State employees.

The State institutions of higher learning are not juristic entities which are separate and distinct from the State, and their employees are not eligible for Social Security coverage under Article 695g, Vernon's Civil Statutes, as amended by House Bill 709, Chapter 501, Acts of the 54th Legislature, which authorizes Social Security coverage agreements for certain instrumentalities of the State and of its political subdivisions.

APPROVED:

Marietta McGregor Payne
Reviewer

Davis Grant
Reviewer

Will D. Davis
Special Reviewer

John Atchison
Acting First Assistant

John Ben Shepperd
Attorney General

MKW/rt

Yours very truly,

JOHN BEN SHEPPERD
Attorney General

By *Mary K. Wall*
Mary K. Wall
Assistant