(February 25, 1911.)

## MOSCOW HARDWARE CO., LTD., Plaintiff, v. THE REGENTS OF THE UNIVERSITY OF IDAHO and THE STATE OF IDAHO, Defendants.

[113 Pac. 731.]

STATE UNIVERSITY—BOARD OF REGENTS—POWERS OF—ERECTION OF BUILDINGS—CONTRACT FOR—FORFEITURE—COMPLETION BY BOARD.

(Syllabus by the court.)

1. The Board of Regents of the State University let a contract to Colson & Son for the construction of the foundation of what is known as the Administration Building, for the contract price of $24,535, and in addition to said price the said board agreed to pay to said Colson & Son for excavating for said foundation, excavating for drain ditches, for furnishing tile and laying and covering the same, a certain price per cubic yard and per lineal foot, amounting, with the contract price, to $31,071.15. According to the estimates of the architect, the contractors had expended in work and material

on said foundation the sum of $7,845.79, and it cost the Board of Regents to complete the work the sum of $24,905.18, thus leaving in the hands of the board $6,165.97 of the contract price for said work.  *Held,* that the Board of Regents must apportion said balance of $6,165.97 *pro rata* according to the amount found due to each, among the respective claimants who established their claims for material, hardware and furnishings to Colson & Son and used by them in said foundation. The materials furnished to Colson & Son for said foundation and thereafter used by the board in the completion of said foundation must be paid for by the board.

2. Under the provisions of sec. 491, Rev. Codes, the Board of Regents is authorized to expend such portion of the income of the university fund as it may deem expedient, for the erection of suitable buildings, etc., but under the provisions of said section, said board is not authorized to expend any portion of the university funds that have been raised or appropriated for other purposes for the erection of buildings.

3. Said board has no authority whatever to incur any indebtedness against the state, directly or indirectly, in the erection of university buildings for which it has not the funds to pay.

4. Under the provisions of sec. 3 of an act of the territorial legislature, approved January 30, 1889, entitled "An act to establish the University of Idaho" (Sess. Laws 1889, p. 17), the Board of Regents was made a body corporate by the name of "The Regents of the State University," and under the provisions of sec. 10, art. 9, of the constitution of the state, the regents have the general supervision of the university and control and direction of all of the funds of and appropriations to the university under such "regulations as may be prescribed by law."

5. Said board may enter into a contract for the erection of buildings for said university, and if it fails to comply with the terms of such contract, an action may be maintained in the district court against it to compel it to do so.

6. In such action any judgment obtained against the board should be paid out of any funds in the hands of the board or its treasurer that are available for the payment of such claim or that are subject to appropriation and expenditure for that purpose.

7. If the board has no money out of which to pay any judgment obtained against it, the judgment creditor must bring his action in this court based upon such judgment and ask for a recommendatory judgment to the legislature.

Original action for a recommendatory judgment.    *Denied.*

C. J. Orland and G. G. Pickett, for Plaintiff.

It is indisputable that the value of the labor and material furnished by Colson & Son is the amount fixed by the architect Loring as $7,845.76. He was the architect in charge of the work and his estimates are binding upon the parties. (*Thompson v. Bradbury*, 5 Ida. 760, 51 Pac. 758; *Tally v. Parsons*, 131 Cal. 516, 63 Pac. 833; *Amer. Bonding Co. v. Gibson*, 127 Fed. 671, 62 C. C. A. 397; 30 Am. & Eng. Ency. of Law, 2d ed., 1270.)

Where work and material have been furnished under a void contract with a municipality, but one which it was competent to make, not *ultra vires*, the plaintiff may recover the value of the labor and material. (*Rebman v. San Gabriel etc. Co.*, 95 Cal. 390, 30 Pac. 564; *Moore v. New York*, 73 N. Y. 241, 29 Am. Rep. 134; *Brady v. New York*, 20 N. Y. 316; *Snow v. Inhabitants of Ware*, 13 Met. (Mass.) 43.)

The corporation must either return the property or pay its reasonable value. (*Lincoln Land Co. v. Village of Grant*, 57 Neb. 70, 77 N. W. 349; *Pimental v. San Francisco*, 21 Cal. 363; *Pittsburg C. & St. L. R. Co. v. Keokuk & H. B. G.*, 131 U. S. 371–389, 9 Sup. Ct. 770, 33 L. ed. 157; *Paul v. City of Kenosha*, 22 Wis. 266, 94 Am. Dec. 598; *Brown v. Atchison*, 39 Kan. 37, 7 Am. St. 515, 17 Pac. 465; *Chapman v. Board of Com.*, 107 U. S. 350, 2 Sup. Ct. 62, 27 L. ed. 378; *Parkersburg v. Brown*, 106 U. S. 488, 27 L. ed. 238; *Livingston v. School Dist.*, 11 S. D. 150, 76 N. W. 301; *Illinois T. & S. Bk. v. Arkansas C. W. Co.*, 67 Fed. 197; *Kauffman v. Raeder*, 108 Fed. 171, 47 C. C. A. 278, 54 L. R. A. 247.)

Where work and material are furnished under a contract in the construction of a building, but not according to its terms, which are of some value, the owner must pay the value of the benefits received. (*School Dist. v. Boyer*, 46 Kan. 54, 26 Pac. 484; *School Dist. v. Lund*, 51 Kan. 731, 33 Pac. 595; *Aetna Iron & Steel W. v. Kossuth Co.*, 79 Iowa, 40, 44 N. W. 215; *McKinney v. Springer*, 3 Ind. 59, 54 Am. Dec. 471.)

No doubt under the terms of the contract the regents would have the right to complete the work, and any balance of the

contract price after paying the cost of completion would belong to the contractor Colson & Son, or their assignee. (*Gleason v. Smith,* 9 Cush. (Mass.) 484, 57 Am. Dec. 62; *Johnson v. Bowman,* 26 Neb. 745, 42 N. W. 754; *School Dist. v. Boyer,* 46 Kan. 54, 26 Pac. 484; *School Dist. v. Lund,* 51 Kan. 731, 33 Pac. 595; *Veazie v. Hosmer,* 11 Gray (Mass.), 396; 9 Cyc. 783; *Charles v. E. F. Hallack L. Co.,* 22 Colo. 283, 43 Pac. 548; *Wells v. Bd. of Education,* 78 Mich. 260, 44 N. W. 267; *Howell v. Medler,* 41 Mich. 641, 2 N. W. 911.)

If there was a contract, the defendant Board of Regents breached it repeatedly; they did not only not deliver warrants allowed and issued upon estimates, but did not have estimates made as agreed by contract, and while several thousands of dollars' worth of labor and material was furnished, they paid not one dollar to the contractor.

Should the court so find, the plaintiff as assignee can sue either upon a *quantum meruit* or upon the contract as it elects (*Spaulding v. Coeur d'Alene Ry. Co.,* 5 Ida. 528, 51 Pac. 408), and the plaintiff, as assignee, has all the rights which Colson & Son would have if claim had not been assigned. (*Howell v. Medler,* 41 Mich. 641, 2 N. W. 911.)

D. C. McDougall, Attorney General, J. H. Peterson and O. M. Van Duyn, Assistants, for Defendants, cite no authorities on points decided.

SULLIVAN, J.—This action was brought by the Moscow Hardware Co. against the Regents of the University of Idaho and the state of Idaho.

As a first cause of action, the plaintiff alleges that between October 1, 1906, and April 1, 1907, it delivered and furnished building material, hardware, finishings, goods, wares and merchandise to be used in the construction of the building known as the "Agricultural Building" of the University of the State of Idaho, of the value of $1,468.45, and that there remains due thereon the sum of $1,174.77; that said goods, wares and merchandise were furnished to Colson & Son, who were the contractors, with the actual knowledge of the de-

fendants, and that said goods, wares and merchandise were placed in the building for the use and benefit of the defendants.

For a second cause of action, it is alleged that between October 10, 1906, and April 1, 1907, the plaintiff sold and delivered to the defendant upon the order of Colson & Son, goods, wares and merchandise and building material to be used, and which were used, in the construction and erection of the foundation of the Administration Building of the University of Idaho, and that said goods and materials were delivered on the grounds near where the foundation was being constructed in the city of Moscow; that Colson & Son were in charge of the work in procuring said material and in the construction of said foundation, and were doing said work under the direction and authority and with the knowledge and consent of the defendants and as its agents and representatives; that on or about February 13, 1907, the Board of Regents discharged Colson & Son and took into its possession all the goods, wares and merchandise, hardware and building material which plaintiff had delivered as aforesaid, and appropriated the same to their own use and benefit; that the defendants, nor either of them, has paid for the same or any part thereof, the reasonable value of which materials, merchandise, etc., is $414.38, with interest thereon.

As a third cause of action, plaintiff alleges that between October 1, 1906, and January 1, 1907, the Standard Lumber Co. delivered to the defendants upon the order of J. A. Colson & Son, goods, wares, merchandise, lumber and building materials to be used in and which were actually used in the construction and erection of said foundation, with the knowledge and consent of the defendants; that on or about February 13, the defendants, said Board of Regents, discharged Colson & Son, and took into their possession all of the goods, wares, merchandise, lumber and building materials which had been delivered by said Lumber Co., and kept and used the same in the building and construction of the foundation of the Administration Building; that said merchandise and material

were of the reasonable value of $560.10, which sum is due and unpaid, with interest thereon.

As a fourth cause of action it is alleged that between August 1, 1906, and March 1, 1907, the Standard Lumber Co. delivered and furnished building materials, lumber, goods, wares and merchandise to be used in the construction of the building known as the Agricultural Building of the University of Idaho, at the request and upon the order of the agents, servants and persons in charge of the work of construction; that said merchandise and materials so furnished for the construction of the Agricultural Building were of the reasonable value of $4,096.45, no part of which has been paid except the sum of $1,846.50, leaving a balance due of $3,249.91, with interest thereon; that said claim was presented to the board and rejected.

For a fifth cause of action, it is alleged that between November 1, 1906, and January 1, 1907, W. A. Lauder sold and delivered to the defendants upon the order of J. A. Colson & Son, goods, wares, merchandise and sand to be used in and which were actually used in the construction and erection of the foundation of the Administration Building of the University of Idaho, and that said merchandise and material and sand were delivered on the ground belonging to defendants at or near the foundation; that Colson & Son were in charge of the work of construction of said foundation and were doing the work under the direction and authority and with the knowledge and consent of the Board of Regents; that on February 13, 1907, the Board of Regents discharged Colson & Son and took and received into their possession all of the said goods, merchandise and sand which had been delivered by Lauder, and have kept and used the same in the building and construction of said foundation, and still keep and appropriate all of the same, the reasonable value of which is $540; that there is now due the said sum of $540, with legal interest thereon.

For a sixth cause of action, it is alleged that between August 1, 1906, and March 1, 1907, Lauder delivered and furnished sand and other building materials to be used in the

construction of the building known as the Agricultural Building of the University of the State of Idaho; that said materials and sand were of the reasonable value of $4,340.90, no part of which has been paid except the sum of $2,183.35, and that there is now due thereon the sum of $2,157.55, with interest thereon; and prays for a recommendatory judgment for the sum of $9,946.92, principal and interest, as provided by sec. 10 of art. 5 of the constitution of the state of Idaho, and for such other and further relief as may be just and equitable.

The answer denies many of the material allegations of the complaint; denies that the Board of Regents is a corporation, and denies that the Board of Regents or the state is owing the plaintiff in any sum whatever on any cause of action set forth in the complaint. The cause was referred to a referee to take the evidence in the case, and in the return of the referee is found a stipulation by the parties to the effect that no question shall be raised with reference to the Regents of the University of the State of Idaho being a corporation; also that in the construction of the Agricultural Building, on the 17th of July, 1906, the contract was awarded to Colson & Son by the executive committee of the Board of Regents, which was thereafter approved by the Board of Regents and the contract was entered into and bond furnished for the completion of said building; that thereafter on the 29th of March, 1907, the Board of Regents, through its executive committee, gave Colson & Son written notice that unless they proceeded to work on the Agricultural Building within three days that they would forfeit their contract and would complete the work themselves; and on the 1st of April, 1907, the Regents of the University declared the contract forfeited and thereafter completed the construction of the building themselves. It is further stipulated that a contract was let to Colson & Son to complete the work for the foundation of the Administration Building and an agreement was entered into on October 10, 1906, with Colson & Son to construct said foundation. Colson & Son failed to furnish the bond required by the contract, and on the 12th of February, 1907,

the Board of Regents, through its agents, ordered them to cease work by reason of the failure to furnish the bond, and Colson & Son did cease work on said foundation, and the Board of Regents thereafter, through its agents, took complete charge of the work and completed the foundation. It is also stipulated that E. J. Clark, mentioned in the testimony of the various witnesses, was the superintendent in charge of the construction of the foundation of the Administration Building for Colson & Son up to the time they ceased work on the foundation, and shortly after the work had ceased, Clark was engaged by the Board of Regents to superintend said work and became the representative and supervisor in charge of said work for the Board of Regents.

Considerable evidence was taken by the referee and reported to this court, and it clearly appears from the evidence that the contract for the construction of the Agricultural Building was let to Colson & Son, and that before the building was completed the contract for the foundation of the Administration Building was let to the same contractors. In one contract they are called Colson & Son and in the other Colson & Sons. From the pleadings and the testimony it appears that some of the materials and merchandise alleged to have been furnished was furnished for the construction of what is known as "Morrill Hall," or the Agricultural Building, and some was furnished for the construction of the foundation of the Administration Building. Under the contract for the construction of the Agricultural Building, the contractors gave bond and received estimates and warrants from time to time as the work progressed, in payment for such work. Before the completion of the building, numerous complaints were made to the regents of the nonpayment of bills by the contractors on said Agricultural Building, and the regents stopped payments to the contractors. The regents thereafter took charge of the Agricultural Building before it was completed and completed it themselves, and they held for the benefit of Colson's creditors the amount of money remaining in their hands under the contract price, which was not utilized in the completion of the building. After con-

siderable litigation a settlement was finally made with the creditors on the Agricultural Building contract, and each creditor was paid twenty per cent of his claim. It appears that under the Agricultural Building contract, the board of regents has paid out all of the money due to the contractors,— that they paid out the entire amount of the contract price.

The first, fourth and sixth causes of action are for the reasonable value of goods, wares, merchandise and materials furnished for the construction of said Agricultural Building. The second, third and fifth causes of action are for goods, wares, merchandise and materials furnished for the construction of the foundation of the Administration Building.

The materials furnished for the Agricultural Building were furnished to the contractors, Colson & Son, and it appears that the regents have paid all of the money due to the contractors to their creditors, *pro rata.* No claim is made for materials furnished to the Board of Regents after they had forfeited Colson & Son's contract, on the Agricultural Building. All of the materials sued for in this action, so far as the Agricultural Building is concerned, were furnished to Colson & Son during the time that they were working under their contract in the construction of said building, and neither the state nor the Board of Regents is liable under the law and the evidence, for any of the material or merchandise furnished to Colson & Son for the construction of said Agricultural Building.

In regard to the contract for the construction of the foundation of the Administration Building, it appears that through negligence, carelessness or other causes, the contractors, Colson & Son, were permitted to proceed with the work on said foundation from October 10, 1906, to the 13th of February, 1907, without furnishing the bond called for by the contract. Prior to the time the contract with Colson & Son was forfeited, the materialmen had furnished considerable materials that were used in the construction of said foundation. It appears that some of them had furnished material that was on the ground but which had not been used in the construction of the foundation at the time the contract was forfeited.

When the contract was forfeited, the Board of Regents would not permit the parties who had furnished certain material which was then on the ground to remove it, but the regents used it in the completion of said foundation, and also availed themselves of the work done by Colson & Son and of the material which had been put in place in the foundation by Colson & Son. In completing said foundation the regents expended and paid out the sum of $26,267.93, and it is conceded under the contract that the cost of the construction of said foundation, including excavation, drain-pipes, etc., amounted to $31,071.15. It is claimed, therefore, that the board has a balance in its hands for Colson & Son's creditors, that is, the difference between the amount actually paid out in completing the contract and the total contract price that Colson & Son would have been entitled to had they completed the contract. However, the fact must not be overlooked that where a contractor fails to complete his contract in the construction of a building and the owner assumes charge and completes the contract for less than the contract price, the law does not require the owner to pay over to the contractor or his creditors the difference between the cost of completing the work and the contract price. In this case the regents took possession of certain materials that were on the ground and not in the foundation when they forfeited the Colson contract, and used those materials in the completion of the foundation. When they forfeited the contract, they had no right to appropriate the materials furnished by dealers to Colson & Son that had not yet been put into the foundation. The Board of Regents is therefore liable for the value of such materials.

It is impossible to determine from the report of the referee and the evidence returned how much of the goods, wares and materials furnished by the respective parties were actually used and put into the construction of the foundation by Colson & Son prior to their forfeiture of the contract, nor have we been able to estimate the amount that was actually appropriated and used by the regents after they declared the forfeiture and undertook the completion of the work themselves. The nearest approximation we are able to

make, therefore, is based upon the value of the contract as it was originally awarded and the amount of money which the regents have actually paid out and expended for the work. The contract, including extras at the rate stipulated for such extras in the contract, would have amounted to $31,-071.15; the amount that has been paid out by the board, either under the contract or in the completion of the work after they took over the same, aggregates $25,628.34. From this total, however, the sum of $652.20, the value of a quantity of old bricks which the regents were to furnish in addition to the payment of the contract price, and the further sum of $70.96 for drainage for the foundation, should be charged against the contract or the contract price as the same was originally stipulated. This deduction would leave the sum of $24,905.18, which has actually been expended by the board in constructing the works and carrying out the contract as originally entered into between the board and Colson. With this sum deducted, there would still be in the hands of the board the sum of $6,165.97 which they would have been obliged to expend had the contractors completed the work in accordance with their contract. In view, therefore, of the fact that these people who furnished material, hardware and supplies have not been paid and that the contractors were not paid any part of this sum, it would appear just and equitable that the regents should apportion this balance of $6,165.97 among the respective claimants who established their claims for material, hardware and furnishings in the completion of this work, *pro rata.* The Board of Regents should make payment accordingly out of any funds that they have in their hands for the erection of said foundation. If they have not sufficient funds for that purpose, they ought to make said payments out of the first money coming into their hands for the erection and construction of said Administration Building. We make this recommendation for the reason that the question of jurisdiction has not been raised in this matter by either of the parties to the action.

Although the question of the jurisdiction of this court to hear and determine this case is not raised, it is clear that this court has no jurisdiction to render a recommendatory judgment herein.   In entering into said contracts, that is, for the construction of the Agricultural Building and the foundation of the Administration Building, the Board of Regents had no authority to incur any indebtedness against the state which the Board of Regents had not the funds to pay.   They have no authority whatever to incur any indebtedness against the state, directly or indirectly, in the erection of university buildings for which they have no funds to pay.   They have no authority to erect a building with the hope or expectation of thereafter securing an appropriation from the legislature or a recommendatory judgment from this court.   Under the provisions of sec. 3 of an act of the territorial legislature, approved January 30, 1889, entitled "An act to establish the University of Idaho," the Board of Regents was made a body corporate by the name of "The Regents of the University of Idaho," and under the provisions of sec. 10, art. 9, of the constitution of the state, the regents have the general supervision of the university and control and direction of all of the funds of and appropriations to the university under such "regulations as may be prescribed by law."   The Board of Regents is a body corporate, and when it enters into a contract for the erection of buildings, if it fails to comply therewith, an action may be maintained against it to compel it to do so, which action may be prosecuted in the district court.

Under the foregoing provisions of the constitution and statutes, there can be no doubt but that the Board of Regents is a body corporate, and may sue and be sued, and that when they enter into a contract, they are liable to the process of the district court the same as any other corporation organized under the laws of the state.   The Board of Regents is a constitutional body, and while the state property could not be sold to satisfy a judgment against the Board of Regents, there is no doubt but that a judgment obtained against the board would be subject to payment out of any funds in the

hands of the board or its treasurer that are available for the payment of such a claim or from any fund which said board has subject to appropriation and expenditure for that purpose.

It is therefore recommended that said Board of Regents apply the sum of $6,165.97 *pro rata* in payment of the several claims represented by the plaintiff herein for material furnished for the foundation of said Administration Building and to recover which this action is prosecuted.

Ailshie, J., concurs.

STEWART, C. J., Dissenting.—I am unable to agree with the majority opinion in this case, if such opinion decides any of the questions involved. I am unable to understand the conclusion of the court. If this court has no jurisdiction to render a recommendatory judgment, then why does the court decide that the Board of Regents should make payment if they have the funds on hand, and if not, that the legislature should make an appropriation for the payment of these claims to the aggregate amount of $6,165.97? I do not know just what kind of a judgment or conclusion this is, and I do not know where the court acquired any original jurisdiction to enter this character of judgment. The jurisdiction of this court to determine claims against the state has been fully considered by this court and determined in the case of *Thomas v. State*, 16 Ida. 81, 100 Pac. 761, and that case should either be followed or reversed.

When this case was commenced in this court, the complaint clearly disclosed that it was an action to establish claims against the Board of Regents of the State University, and this court appointed a referee to hear the testimony and make report, and the parties to this litigation have gone to the expense and trouble of introducing their testimony, which is quite extensive, and if when the action was commenced the court was of the opinion that it would have no jurisdiction to hear the case under the provisions of the constitution, it should have said so, and not put these liti-

gants to the expense and trouble of presenting their testimony and occasioning the delay which has resulted from a trial in this court.

In my opinion, either this court has jurisdiction to recommend a judgment to the legislature, or it has no jurisdiction of the action and the action should be dismissed. The court now concludes that the plaintiff has a claim against the state and that it should be paid. If so, this court should enter a recommendatory judgment to the legislature, and if the legislature has previously made an appropriation applicable to such payment, or the regents have funds in their hands, then the legislature can adjust that matter in making their appropriation to pay such judgment.