(No. 5645.   November 13, 1931.)

H. L. BASSETT, Respondent, v. JAMES SWENSON and WILLIS SWENSON, Substituted for JOSEPH SWENSON, Appellants.

[5 Pac. (2d) 722.]

Earl W. Cory and J. H. Andersen, for Appellants.

258

Merrill & Merrill, for Respondent.

McNAUGHTON, J.—This is an action to condemn a plot of land 150 feet by 180 feet as a diversion and power site incident to the appropriation of 20 second-feet of the waters of Whiskey Creek for power purposes, to wit: to generate electric current for use on respondent's farm.

The assignments of error (1) question plaintiff's right to appropriate the water on a claim that the permit granted by the Commissioner of Reclamation is void because initiated by trespass, and also abandoned, claiming that the plaintiff did not begin work within the time first limited by the commissioner; (2) question the right of eminent domain in behalf of this use; (3) question the court's rulings; in permitting amendment of the complaint during the trial, changing the boundaries of the plot for which condemnation is sought; on admission of evidence; on instructions; and on taxation of costs.

It is quite generally held that a water right initiated by trespass is void. That is to say, one who diverts water and puts it to a beneficial use by aid of a trespass does not, pursuant to such trespass, acquire a water right. Any claim of right thus initiated is void. (*Marshall v. Niagara Springs Orchard Co.,* 22 Ida. 144, 125 Pac. 208; *Tobey v. Bridgewood,* 22 Ida. 566, 127 Pac. 172; *Prentice v. McKay,* 38 Mont. 114, 98 Pac. 1081; Wiel on Water Rights, 3d ed., sec. 221, and cases cited.)

In the case at bar it appears that the plaintiff acquired a permit from the Department of Reclamation to appropriate the waters in question for the use proposed and is now seeking by condemnation an easement in the lands of the defendants in behalf of that use and to authorize an entry to construct the works. Defendants also have a permit to appropriate these waters, which permit was issued subsequent to that of the plaintiff.

In *Marshall v. Niagara Springs Orchard Co., supra,* and in *Tobey v. Bridgewood, supra,* it was held that because the permit holder had not acquired by purchase or condemnation the right to enter the lands upon which the diver-

sion was situate, for the purpose of making the inspection and survey which was necessary in supplying the data for the application, on that account the application and permit pursuant to it were void. The defendants in this case rely upon the authority of the above cases and claim that no permission or grant of right was given plaintiff to enter the lands in question for the purpose of making a survey and acquiring the data in his application and that plaintiff's application and permit founded upon it are void as initiated by trespass and that condemnation will not lie in this case for want in the condemnor of a prior right to appropriate the water.

Sec. 3, art. 15, of the Constitution provides in part:

"The right to divert and appropriate the unappropriated waters of any natural stream to beneficial uses, shall never be denied."

C. S., sec. 5568, provides:

"All rights to divert and use the waters of this state for beneficial purposes shall hereafter be acquired and confirmed under the provisions of this chapter. And after the passage of this title all the waters of this state shall be controlled and administered in the manner herein provided."

C. S., sec. 5569, provides:

"For the purpose of regulating the use of the public waters and of establishing by direct means the priority right to such use, any person, association or corporation hereafter intending to acquire the right to the beneficial use of the waters of any natural streams, springs or seepage waters, or lakes or other public waters in the state of Idaho, shall, before commencing the construction, enlargement, or extension or change in the point of diversion of the ditch, canal, or other distributing works, or performing any work in connection with said construction or proposed appropriation or the diversion of any waters into a natural channel, make an application to the department of reclamation for a permit to make such an appropriation. Such application must set forth:

"1. The name and post-office address of the applicant.

"2. The source of the water supply.

"3. The nature of the proposed use.

"4. The location and description of the proposed ditch, channel or other work and the amount of water to be diverted and used. . . . .

" . . . . The application shall be accompanied by a plan and map in duplicate of the proposed works for the diversion and application of the water to a beneficial use, showing the character, location and dimensions of the proposed reservoirs, dams, canals, ditches, pipe lines and all other works to be used by them in the diversion of the water, and the area and location of the lands proposed to be irrigated."

In the case at bar the evidence discloses that the plaintiff made inspection and survey, for data used in his application, from the highway without any physical trespass upon the defendants' property. The application and data therein contained was sufficient to satisfy the requirements of the statute and the Commissioner of Reclamation issued the permit.

In this action the plaintiff is seeking the right to enter defendants' property to effect the diversion authorized by his permit. No trespass has been shown in this case unless it is trespass *per se* to make application for and receive a permit to appropriate the waters of this state where the point of diversion is upon the land of another, without first acquiring consent or a grant of such right.

The waterfall and contemplated diversion in this case is within 150 feet of the highway. The land sought by condemnation is bounded on one side by the highway. Plaintiff saw it; desired it; examined it; and by means of triangulation surveyed the power site and rights of way necessary, from the highway, all without entering the defendants' property. The first entry upon defendants' property necessary in fact to the appropriation of this water is now being sought in a lawful manner.

██ Under sec. 3, art. 15, of the Constitution and art. 1, chap. 218, of Idaho Compiled Statutes, plaintiff, though

having no right or title in the land upon which the waterfall is situated, had a lawful right to make application for a permit to put it to a beneficial use, and having acquired the necessary data for his application without going upon the land, the permit issued upon his application was lawful.

In the original permit plaintiff was given 60 days in which to commence work. This time was extended by the Commissioner of Reclamation upon the showing that the defendants would not permit an entry upon their premises.

C. S., sec. 5570, provides:

" . . . . Every holder of a permit which shall be issued under the terms and conditions of an application filed hereafter appropriating 25 cubic feet or less per second must, within 60 days from the date upon which said permit issues from the office of the department of reclamation, commence the excavation or construction of the works by which he intends to divert the water, and must prosecute the work diligently and uninterruptedly to completion, unless temporarily interrupted through no fault of the holder of such permit by circumstances over which he has no control."

We find that the commissioner on the facts shown properly extended the time within which to begin the works.

The right of eminent domain is a sovereign right which may be exercised in behalf of such uses as to the sovereign seems proper, granted either by the people in their Constitution or by the legislature if not restricted by the Constitution. (*Potlatch Lumber Co. v. Peterson,* 12 Ida. 769, 118 Am. St. 233, 88 Pac. 426; *Portneuf Irr. Co. v. Budge,* 16 Ida. 116, 18 Ann. Cas. 674, 100 Pac. 1046.)

Generally this right is granted on behalf of public uses. In Idaho the Constitution expressly designates as public all uses "necessary to the complete development of the material resources of the state."

Sec. 14, art. 1, of the Constitution provides:

"The necessary use of lands . . . . to the complete development of the material resources of the state or the preservation of the health of its inhabitants, is hereby declared

to be a public use, and subject to the regulation and control of the state.

"Private property may be taken for public use, but not until a just compensation, to be ascertained in the manner prescribed by law, shall be paid therefor."

This provision of our Constitution to the extent of establishing the nature of the use required has been held to be self-executing and constitutes a grant of the power of eminent domain in behalf of the uses therein expressed. No action of the legislature further than providing the procedural machinery by which the right may be applied is necessary. This is provided by the special proceedings in eminent domain enacted by the legislature, and whether or not a right claimed under this provision of the Constitution is within the grant is held to be a judicial question to be determined by the courts. (*Blackwell Lumber Co. v. Empire Mill Co.*, 28 Ida. 556, Ann. Cas. 1918A, 189, 155 Pac. 680; *Washington Water Power Co. v. Waters*, 186 Fed. 572.)

The courts of this state have repeatedly held the right is granted to private enterprises in uses necessary to the complete development of the state. In behalf of a private lumber company: *Blackwell Lumber Co. v. Empire Mill Co.*, *supra; Codd v. McGoldrick Lumber Co.*, 48 Ida. 1, 67 A. L. R. 580, 279 Pac. 298. In behalf of a power company not a public utility: *Washington Water Power Co. v. Waters*, *supra*. In behalf of a private mining company: *Marsh Mining Co. v. Inland Empire Mining & Milling Co.*, 30 Ida. 1, 165 Pac. 1128.

We are convinced that power in the streams of this state capable of being developed into electric energy is one of the material resources of the state and that the use of land necessary to its development constitutes under our Constitution a public use for which condemnation will lie.

The fact that in this case the utility to be developed will be applied in aid of farming does not make the power developed less the development of a material resource of the state. The right of eminent domain in this state is not de-

termined by the character of the business developing the natural resource. It is enough that the use is necessary in the development of one of the state's important resources. We find the use in question satisfies that requirement.

In this case during the trial plaintiff moved to amend his complaint, changing the description of the land sought by shifting the description of the plot desired 55 feet to the south. It does not appear that the new description called for land of a different nature. Both descriptions completely embrace the waterfall in question. No prejudice is shown to have resulted from the change. The only complaint made by the defendants is that no offer of purchase prior to instituting the condemnation action was made covering the precise land sought to be condemned. From the whole evidence it appears that there was no difference in value between the two tracts. It further appears that defendants flatly refused to sell for any reasonable consideration any land necessary for developing the power in question. We think that the objection was purely technical and without merit and was properly overruled.

The witnesses offered for the purpose of estimating the value of the property as a power site were not shown to have any expert knowledge of such values. We find no error in rejecting the offer of their opinions on the subject.

Under C. S., sec. 7414, subd. 2, the jury is required to return the damages to the portion of the tract not taken by reason of the separation of the part taken. If they do not find from the evidence that any actual damage results, we see no reason for requiring that nominal damages be returned. The statute expressly provides that any special benefits found to accrue under the third subdivision of C. S., sec. 7414, may be offset against such damages but not against the value of the part taken. And this provision has been upheld. (*Tyson Creek Ry. Co. v. Empire Mill Co.*, 31 Ida. 580, 174 Pac. 1004.) The statute contemplates that the land owner may or may not be damaged because of the segregation alone. The instructions limiting the recovery

on account of this item to damages proven, if any, were correct.

C. S., sec. 7421, which is part of the special proceedings in condemnation, provides:

"Costs may be allowed or not, and, if allowed, may be apportioned between the parties on the same or adverse sides in the discretion of the court."

Notwithstanding this section, this court has repeatedly held the condemnor must pay just compensation for the property taken, and all costs. (*Rawson-Works Lumber Co. v. Richardson,* 26 Ida. 37, 45, 141 Pac. 76.)

In this case the court awarded costs to the defendant, and no complaint of this provision in the judgment is made by the plaintiff. But an item for $27.30 for engineer's fees was stricken from the cost bill filed by the defendants. This ruling is assigned as error.

In this state, costs both as to allowable items and amounts for such items are statutory. In *Cronan v. District Court,* 15 Ida. 462, 98 Pac. 614, the court said:

"At common law costs were not recoverable *eo nomine.* Costs can therefore be recovered only in cases where there is statutory authority therefor. The power to impose costs must then be found in some statute or some rule of court in which the legislature has given the power in general terms to the court to make rules and orders in regard thereto. (11 Cyc. 24.) The cost items above disallowed are not provided for by statute or rule of court, hence cannot be recovered."

A court has no power to award as costs, items of expense not authorized by statute in this or any other proceeding.

For the foregoing reasons, no error appearing, the judgment herein is affirmed. This being an action in condemnation, the land owner, appellant here, is entitled to his statutory costs on this appeal.

Lee, C. J., and Givens and Varian, JJ., concur.

ON PETITION FOR REHEARING.

(December 11, 1931.)

McNAUGHTON, J.—A petition for rehearing has been filed by the appellants; also a motion by respondent challenging the appellants' cost bill.

Appellants claim that the decision in this case is inconsistent with the holding of this court in *Marshall v. Niagara Springs Orchard Co.*, 22 Ida. 144, 125 Pac. 208. In the Marshall case the court concluded from the record that a trespass had been committed in procuring data for the application for a permit to appropriate water. The court held that on that account the permit thus initiated was void. In this case the undisputed testimony is that the data for the application was obtained without any entry upon the premises or trespass whatever. It is true that the court in the former case apparently based its findings upon the assumption that it was impossible for the applicant to obtain the data for his survey and plats without committing trespass. The expression is a little out of the ordinary. Of course what was said on that fact issue was with reference to the record in that case. We assume that trespass was committed in the Marshall case, for the decision was based upon that fact. Here, however, the record is positively the reverse. The cases are not parallel; they appear to be at right angles on the issue of trespass in procuring the data for the application for permit. We have no occasion to overrule the decision in the former case or even criticise the decision or the expressions in the opinion.

The respondent complains of the cost bill. The action being in condemnation, costs are allowed to the land owner regardless of who may have been successful on the appeal. (*Rawson-Works Lumber Co. v. Richardson* (on petition for rehearing), 26 Ida. 45, 141 Pac. 76; *Portneuf-Marsh Valley Irr. Co. v. Portneuf Irr. Co.* (on petition for rehearing), 19 Ida. 492, 114 Pac. 21; *Washington Water*

*Power Co. v. Waters,* 19 Ida. 595, 611, 115 Pac. 682.) The item for $5.00 is for service and expense to the clerk in certifying and transmitting the transcript and is allowed by C. S., sec. 7166.

An item for 897 folios of transcript at 15¢ per folio, amounting to $135.55, is claimed. C. S., sec. 6560, as amended by Sess. Laws 1925, chap. 111, p. 157, provides in part as follows:

"2. That in all actions other than criminal actions, such reporter shall charge and receive, and retain as provided in subdivision 1, hereof, 15 cents per folio of 100 words for the original and four carbon copies thereof, . . . . "

An inspection of the transcript convinces us that there are not to exceed 558 folios of 100 words each in the transcript and the item for transcript should be $83.70.

The item for briefs is allowable as costs under the rules of this court and is equivalent to statutory allowance. (*California Gulch Placer Mining Co. v. Patrick,* 37 Ida. 661, 218 Pac. 378; *Nielson v. Board of County Commrs.,* 40 Ida. 481, 234 Pac. 686.)

Costs are retaxed in the amount of $159.30.

The petition for rehearing is denied, with costs as above noted.

Lee, C. J., and Givens and Varian, JJ., concur.