213 P.2d 911

RENNINGER et al. v. STATE et al.

No. 7567.

Supreme Court of Idaho.

Jan. 12, 1950.

Robert E. Smylie, Attorney General, Don J. McClenahan, Asst. Atty. Gen., for respondents.

J. H. Felton, Lewiston, William J. Jones, Lewiston, for appellants.

GIVENS, Justice.

Plaintiffs (appellants here) own certain real estate in Latah County purchased for and used as a recreation park, dance hall, cafe and home.

Highway No. 95 is a public highway crossing the Palouse River on adjacent land. In 1946 and 1947, the Department of Public Works constructed a concrete bridge with approaches across the Palouse River, replacing an old bridge, and in so doing the highway was raised in grade and the same acted as a dam partially obstructing the natural flow of the river, causing it to overflow lands owned by the plaintiffs during high water and freshet stages.

The bridge is so constructed that the plaintiffs' property has been overflowed for a period of several days and the flooding of plaintiffs' property by the overflow from the Palouse River has, according to the complaint, rendered the property unfit for recreational purposes and has rendered the residence, cafe and other buildings untenable during certain periods of the year.

The complaint alleges that the action of the Department of Public Works in so constructing the bridge has taken from the plaintiffs the greater portion of the value of the property, reducing the value by the sum of $20,000.00; and the State has failed and refused to institute condemnation proceedings to determine the extent of the taking of plaintiffs' property.

The plaintiffs presented a claim to the Board of Examiners of the State of Idaho for $20,000.00, which the Board of Examiners denied.

The State (defendant) demurred to the complaint on the ground that the court has no jurisdiction over the defendant or the subject matter of the action; and that the complaint does not state facts sufficient to constitute a cause of action. The trial judge sustained the demurrer and dismissed the proceedings. This appeal is from the judgment.

While the bridge, road or approaches in question do not cross any part of the plaintiffs' land, it is the contention of the appellants that the overflowing of the land in the manner alleged constitutes a *taking* of the land.

The Supreme Court of the United States construed, as set forth below, this provision of the Wisconsin Constitution:

"The property of no person shall be taken for public use without just compensation therefor." (Art. 1, § 13), as comprehending thereunder a "taking" resulted where land was flooded by the erection of a public structure under circumstances similar to the situation herein. The Wis-

consin Constitution as to "taking" is essentially the same as ours, Article I, Section 14:

"* * * Private property may be taken for public use, but not until a just compensation to be ascertained in the manner prescribed by law, shall be paid therefor."

"The declaration states that, by reason of the dam, the water of the lake was so raised as to cause it to overflow all his land, and that the overflow remained continuously from the completion of the dam, in the year 1861, to the commencement of the suit in the year 1867, and the nature of the injuries set out in the declaration are such as show that it worked an almost complete destruction of the value of the land.

"The argument of the defendant is that there is no taking of the land within the meaning of the constitutional provision, and that the damage is a consequential result of such use of a navigable stream as the government had a right to for the improvement of its navigation.

"It would be a very curious and unsatisfactory result, if in construing a provision of constitutional law, always understood to have been adopted for protection and security to the rights of the individual as against the government, and which has received the commendation of jurists, statesmen and commentators as placing the just principles of the common law on that subject beyond the power of ordinary legislation to change or control them, it shall be held that if the government refrains from the absolute conversion of real property to the uses of the public it can destroy its value entirely, can inflict irreparable and permanent injury to any extent; can, in effect, subject it to total destruction without making any compensation, because in the narrowest sense of that word, it is not taken for the public use. Such a construction would pervert the constitutional provision into a restriction upon the rights of the citizen, as those rights stood at the common law, instead of the government, and make it an authority for invasion of private right under the pretext of the public good, which had no warrant in the laws or practices of our ancestors." * * *

"But there are numerous authorities to sustain the doctrine that a serious interruption to the common and necessary use of property may be, in the language of Mr. Angell, in his work on water-courses, equivalent to the taking of it, and that under the constitutional provisions it is not necessary that the land should be absolutely taken. * * * As it is the Constitution of that State that we are called on to construe, these decisions of her Supreme Court, that overflowing land by means of a dam across a stream is taking private property, within the meaning of that instrument, are of special weight if not conclusive on us. * * *." * * *

"We are not unaware of the numerous cases in the state courts in which the doctrine has been successfully invoked, that

for a consequential injury to the property of the individual arising from the prosecution of improvements of roads, streets, rivers and other highways for the public good, there is no redress; and we do not deny that the principle is a sound one in its proper application, to many injuries to property so originating. And when, in the exercise of our duties here, we shall be called upon to construe other state constitutions, we shall not be unmindful of the weight due to the decisions of the courts of those States. But we are of opinion that the decisions referred to have gone to the uttermost limit of sound judicial construction in favor of this principle, and, in some cases, beyond it, and that it remains true that where real estate is actually invaded by superinduced additions of water, earth, sand or other material, or by having any artificial structure placed on it, so as to effectually destroy or impair its usefulness, it is a taking, within the meaning of the Constitution, and that this proposition is not in conflict with the weight of judicial authority in this country, and certainly not with sound principle. Beyond this we do not go, and this case calls us to go no further." Pumpelly v. Green Bay & Mississippi Canal Co., 13 Wall. 166, 80 U.S. 166, 20 L.Ed. 557 at pages 560–561.

■ This case has been followed approving the doctrine that the government cannot, by abstaining from absolute conversion of property, inflict permanent and irreparable injury on it without making any compensation, under a plea that it is not "taken" for the public use. Eaton v. Boston, C. & M. R. R. Co., 51 N.H. 504, 12 Am.Rep. 147, is thus quoted with approval by Staton v. Norfolk & C. R. Co., 111 N.C. 278, 284, 16 S.E. 181, 183, 17 L.R.A. 838 at page 843, after likewise quoting with approval from the Pumpelly case, supra. The following cases affirm and apply the same principle: Hollingsworth v. Parish of Tensas, C.C., 17 F. 109, at page 115, 4 Woods 288, 289; King v. United States, C.C., 59 F. 9, at page 12; Conniff v. City and County of San Francisco, 67 Cal. 45, 47, 7 P. 41, at page 44; approved in Tyler v. Tehama County, 109 Cal. 618, 42 P. 240, at page 242:

"If the property of the plaintiff was in fact taken for public use without having been condemned and paid for under the provisions of the Code relating to eminent domain, he may recover compensation therefor in an appropriate action, notwithstanding the mode of its taking was unauthorized." Larrabee v. Town of Cloverdale, 131 Cal. 96, 63 P. 143, as to taking by partial flooding; Colusa & H. R. Co. v. Leonard, 176 Cal. 109, 167 P. 878 at page 883; Dick v. City of Los Angeles, 34 Cal. App. 724, 168 P. 703; and generally, Weisshand v. City of Petaluma, 37 Cal. App. 296, 174 P. 955; Haynes v. Indio Levee Dist., 46 Cal.App. 436, 189 P. 475; Smith v. City of Los Angeles, 66 Cal.App. 2d 562, 153 P.2d 69; Kemper v. City of Louisville, 14 Bush, Ky., 87 at page 92;

Mayor, etc. of City of Baltimore v. Merryman, 86 Md. 584, 592, 39 A. 98 at page 99; Grand Rapids Booming Co. v. Jarvis, 30 Mich. 308 at pages 321, 324; Inman v. Tripp, 11 R.I. 520, 525, 23 Am.Rep. 520, 523.

In Hughes v. United States, 230 U.S. 24, 33 S.Ct. 1019, 57 L.Ed. 1374, 46 L.R.A., N.S., 624, the facts were different, in that liability was claimed because the United States had constructed a levee not along the line of an original levee theretofore constructed to protect appellant's land from a rise of the Mississippi River, but instead, constructed the levee on what might be termed the back or far side of appellant's land; thus, his land lay between the two levees. The Court specifically noted:

"* * * This being so, as it is not pretended that the building of the new line of levee here considered trespassed upon the property rights of the owners of the Timberlake plantation by an actual taking of land, the asserted claim but comes to this: that the owner of the Timberlake plantation, abutting on the river, is entitled to hold the United States responsible, because in improving the navigation of the river the officers of the United States, in selecting the place where the levee should be built, did not select the front of the plantation, that is, did not construct the levee along the river bank of the plantation. Thus accurately fixing the contention, it is patent that we cannot affirm the judgment of the court below against the United States as to the Timberlake plantation without reversing its judgment in favor of the United States as to the Wigwam plantation, and without disregarding the decision which we have just announced in the Jackson Case [230 U.S. 1, 33 S.Ct. 1011, 57 L.Ed. 1363]." Hughes v. U. S., supra, 230 U.S. 24, 33 S.Ct. 1019, 1023, 57 L.Ed. at page 1378.

The Jackson case referred to immediately preceded the Hughes case, Jackson v. United States, 230 U.S. 1, 33 S.Ct. 1011, 57 L.Ed. 1363, recognized the Pumpelly case, supra, and distinguished it, but without in any way detracting from the force and effect thereof, as is conclusively demonstrated by later interpretations and applications of the Pumpelly case by the Supreme Court of the United States. The Pumpelly case as so construed in the Jackson case, brings the case at bar within its orbit and outside the orbit of the Hughes case. Keokuk & H. Bridge Co. v. United States, 260 U.S. 125, 43 S.Ct. 37, 67 L.Ed. 165, likewise merely involved temporary damage from blasting and not either a permanent or intermittent flooding.

The United States Supreme Court has not departed in the slightest from the rule set forth in the Pumpelly case, because in United States v. Cress, 243 U.S. 316, 37 S.Ct. 380, 383, 61 L.Ed. 746, the Court thus followed and approved the Pumpelly case:

"Pumpelly v. Green Bay & M. Canal Co., 13 Wall. 166, 20 L.Ed. 557, involved the

right to compensation for land overflowed with backwater from a dam erected and maintained in the Fox river, under authority of the state of Wisconsin, for the improvement of navigation. * * * The raising of the river above its natural stage, by means of an artificial structure, was the gravamen of the complaint. It was argued that the state might, in the interest of the public, 'erect such works as may be deemed expedient for the purpose of improving the navigation and increasing usefulness of a navigable river, without rendering itself liable to individuals owning land bordering on such river, for injuries to their lands resulting from their overflow by reason of such improvements.' This court overruled the contention, and held there was a taking without compensation, contrary to the applicable provision of the Constitution of Wisconsin."

Sanguinetti v. United States, 264 U.S. 146, 44 S.Ct. 264, 68 L.Ed. 608, followed with approval the Pumpelly case and the Cress case, supra, and United States v. Lynah, 188 U.S. 445, 23 S.Ct. 349, 47 L.Ed. 539, holding that where the structure causes 'permanent liability to *intermittent* but inevitably recurring overflows,' it is a taking. (Emphasis ours.) Though in the Sanguinetti case the facts were held not to bring the case within the rule, the rule applied to the case at bar would make the Sanguinetti case applicable, as clearly appears from the analysis in Jacobs v. United States, 5 Cir., 45 F.2d 34, which by ultimate

approval in 290 U.S. 13, 54 S.Ct. 26, 27, 78 L.Ed. 142, 96 A.L.R. 1, thus reaffirmed the rule as to what constitutes taking, where the construction of a dam by the Government caused an increase in the *occasional* overflow on petitioners' lands:

" * * * A servitude was created by reason of *intermittent* overflows which impaired the use of the lands for agricultural purposes. (Emphasis ours.) * * * There was thus a partial taking of the lands for which the government was bound to make just compensation under the Fifth Amendment." Citing cases.

Other courts have so construed the Sanguinetti case: Hogge v. Drainage Dist. No. 7, 181 Ark. 564, 26 S.W.2d 887; Krebs v. State Road Commission, 160 Md. 584, 154 A. 131 at page 134.

It may be urged that the Pumpelly and other cases apply only as to dams. However, many of the cases considered bridges and one of the most elucidating is Barron v. City of Memphis, 113 Tenn. 89, 80 S.W. 832, 833, 106 Am.St.Rep. 810, where facts and circumstances were almost identical with those herein; i.e., a bridge causing water to overflow land, and the court held there was a taking. The latest affirmation we have found of this conception of *taking* is United States v. Sponenbarger, 308 U.S. 256, 60 S.Ct. 225, 84 L.Ed. 230, which at page 238 recognizes with approval the Jacobs, Pumpelly, Cress and Sanguinetti cases. The late case of Lage v. Pottawat-

tamie County, 232 Iowa, 944, 5 N.W.2d 161, reviews the leading authorities above noted and squarely holds that the complaint herein sufficiently alleges a taking.

In essence, this is a condemnation suit in reverse. The State took appellants' land without paying for it and now contends, because of interposed immunity of the State, appellants may not recover herein.

■ Article 1, Section 14 of the Constitution of Idaho, is mandatory that private property may not be taken until a just compensation, to be ascertained in the manner prescribed by law, is paid. This Section is self-executing:

"This provision of our Constitution to the extent of establishing the nature of the use required has been held to be self-executing and constitutes a grant of the power of eminent domain in behalf of the uses therein expressed. No action of the Legislature further than providing the procedural machinery by which the right may be applied is necessary. This is provided by the special proceedings in eminent domain enacted by the Legislature, and whether or not a right claimed under this provision of the Constitution is within the grant is held to be a judicial question to be determined by the courts." Bassett v. Swenson, 51 Idaho 256, 5 P.2d 722, 725.

■ The constitutional debates attendant upon the passage of this Section are probably as extended as upon any one section. Though they did not directly involve

the point herein, Vol. 1, pp. 288, 318 and 366, and Vol. 2, pp. 1596, 1607 to 1632, do, however, constantly reiterate and emphasize that no private property may be taken by any one without just compensation being paid therefor. Notice particularly pp. 348, 353 and 359, Vol. 1. It being thus firmly established and announced by the Constitution that the owner of property is entitled to compensation before it can be taken, to force him for relief to file a suit for recommendatory judgment, Art. 5, Sec. 10, before the Supreme Court, almost denies relief because such procedure is uncertain, problematical, dilatory, and based purely on sufferance and not on right. Curtis v. Moore, 38 Idaho 193, 221 P. 133.

■ The district court is specifically given jurisdiction of condemnation proceedings, Sections 7-706 to 7-710, I.C. Such procedure provides for a judgment against the condemnor, thus the statute under the mandate of the Constitution contemplates judgment may be entered against the State for the value of the property taken and such judgment may be enforced. Big Lost River Irr. Co. v. Davidson, 21 Idaho 160 at page 168, 121 P. 88:

"It will thus be seen that under the provisions of the Constitution private property may be taken for public use, but not until just compensation, ascertained in a manner prescribed by law, shall be paid therefor. This provision of the Constitution limits the power of the Legislature in providing the proceedings for the taking of private

property for public use, in that before such property can be so taken a just compensation must be first ascertained and the payment therefor made." 21 Idaho at page 168, 121 P. at page 91.

" * * * Under our Constitution property cannot be taken until it is paid for, and consequently our statute has provided that judgment may be rendered for the value of the property sought to be taken and execution issued to collect such judgment as a means of payment in accordance with the provisions of the Constitution, and that a judgment of condemnation cannot be entered until after such payment has been made, either by the payment of money upon the judgment or by its payment through processes of execution. * * *" 21 Idaho at page 178, 121 P. at page 94. Ryan v. Weiser Valley Land & Water Co., 20 Idaho 288, 118 P. 769; Bassett v. Swenson, supra.

"Such judgment is enforceable against the state by mandamus." Lewis, Eminent Domain, Sec. 878; Jeffreys v. Huston, 23 Idaho 372, 129 P. 1065; Reed v. Huston, 24 Idaho 26 at page 34, 132 P. 109, Ann. Cas.1915A, 1237; Higer v. Hansen, 67 Idaho 45, 170 P.2d 411.

In a condemnation suit, two judgments are entered: one against the condemnor and the other against the condemnee granting the land to the condemnor. Big Lost River Irr. Co. v. Davidson, supra. This provision of the Constitution, therefore, waives the immunity of the State from suit, and if the State takes the property without condemning, the landowner, to give full force and effect to the provision of the Constitution as self-executing, must be entitled to sue therefor and such are the universal holdings of the courts which have had occasion to consider this specific point; i.e., where the State has taken private property for public use without paying for it, and tries to avoid paying by claiming immunity. Chick Springs Water Co. v. State Highway Department, 159 S.C. 481, 157 S.E. 842; Milhous v. State Highway Department, 194 S.C. 33, 8 S.E.2d 852, 128 A.L.R. 1186; State Highway Board v. Ward, 42 Ga.App. 220, 155 S.E. 384; Brooks County v. Elwell, 63 Ga.App. 308, 11 S.E.2d 82; Rosenbaum v. State Road Department of Florida, 129 Fla. 723, 177 So. 220, and State Road Department of Florida v. Tharp, 146 Fla. 745, 1 So.2d 868, clearly and tersely affirms appellants' position thus:

"In the administration of constitutional guaranties, the State cannot afford to be other than square and generous. To deprive the citizen of his property by other than legal processes and depend on escape from the consequences under cover of the plea of nonsuability of the State is too anomalous and out of step with the spirit and letter of the law to claim protection under the Constitution." 1 So.2d at page 870; Jacobson v. State of North Dakota, Dept. of State Highways, 68 N.D. 259, 278 N.W. 652; Rose v. State, Cal., 105

P.2d 302; House v. Los Angeles County Flood Control Dist., 25 Cal.2d 384, 153 P. 2d 950 at page 956; State ex rel. Peterson, v. Bentley, 216 Minn. 146, 12 N.W.2d 347 at page 355; Morrison v. Clackamas County, 141 Ore. 564, 18 P.2d 814 at page 818.

We hold that the waiver of immunity applies only with respect to eminent domain proceedings and we do not depart from the rule heretofore announced in tort actions. State v. Parsons, 58 Idaho 787, 80 P.2d 20; Nordby v. Department of Public Works, 60 Idaho 475, 92 P.2d 789.

█ It is urged that if appellants are entitled to any relief against respondents, Thomas & Faris v. State, 16 Idaho 81, 100 P. 761, holds that it would be a claim over which the district court would have no jurisdiction and only at most the basis for suit for a recommendatory judgment in this Court. Thomas v. State, supra, at least departed from Moscow Hdw. Co., Ltd. v. Regents of University of Idaho, 19 Idaho 420, 113 P. 731, and that case with subsequent approving and elaborating decisions, First National Bank of Moscow v. Regents of University of Idaho, 26 Idaho 15, at page 18, 140 P. 771; State ex rel. Black v. State Board of Education, 33 Idaho 415, 196 P. 201, fairly support the proposition that where sovereign immunity from suit is waived by constitutional sanction, as is the case herein since Art. 1, Section 14, is self-executing as to eminent domain, rights and proceedings, the district court has jurisdiction of the consequent cause

of action and same does not constitute a claim within the jurisdiction of this court over recommendatory judgments.

The judgment is reversed with instructions to overrule the demurrer and require respondents to answer and proceed to trial upon the merits of the case. Because this is, in effect, a condemnation suit and the condemnor must bear all costs, costs are awarded appellants.

HOLDEN, C. J., and PORTER and TAYLOR, JJ., concur.

KEETON, Justice (dissenting).

The questions presented for determination in this case are: Can an action of this nature be maintained against a sovereign state, and do the constitution and laws of the State waive the immunity of the State from such suit?

It is a general proposition of law that a state by reason of its sovereignty is immune from suit, and it cannot be sued without its consent in its own courts, the courts of a sister state, or by an individual in the Federal Courts. 59 C.J. 300.

This principle was recognized by this court in Hollister v. State, 9 Idaho 8, 71 P. 541, 542, in which the court said:

"That a people in their collective capacity, exercising the rights, privileges, duties, and obligations of sovereignty, cannot be sued except by their consent, is a principle too well established to require

discussion. If the authority to maintain this action cannot be found either in our constitution or statutes, then the action must fail."

Appellants contend that the facts alleged constitute a taking of the property which is prohibited by Secs. 13 and 14, Art. 1 of the State Constitution, and further cites Amendments V and XIV of the Constitution of the United States. The parts of the constitutional provisions relied on, and particularly emphasized are:

"No person shall * * * be deprived of life, liberty or property without due process of law." Sec. 13, Art. 1, Idaho Constitution.

"Private property may be taken for public use, but not until a just compensation, to be ascertained in the manner prescribed by law, shall be paid therefor." Sec. 14, Art. 1, Idaho Constitution.

"No person shall * * * be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." Amendment V, Constitution of the United States.

" * * * nor shall any State deprive any person of life, liberty, or property, without due process of law; * * *." Sec. 1, Amendment XIV, Constitution of the United States.

It is not contended by appellants that the State by any legislative act, has waived its immunity from suits of this nature, and appellants do not question the general principle that a suit against a sovereignty cannot be maintained without such sovereignty's consent; but contend that the provisions of the constitution, supra, are self-executing, and may be enforced by the courts independently of any legislative act.

On the question of what provisions of the constitution of a state are self-executing and which are not, the courts of the country are not in accord.

Actions have frequently been brought against governmental bodies based on the theory that injury to private property caused by acts of governmental agents constitute a taking, damage, or use for public purposes, and that under the eminent domain provision of various constitutions, compensation should be paid.

If a recovery is to be allowed, the immunity of a state from suit must be circumvented, and the eminent domain theory is one way of attempting so to do.

In this case it is contended that the act complained of constitutes a *taking* of private property for a public use, and that, therefore, the provision of the constitution prohibiting the taking of property without compensation is, in effect, a consent to the bringing of an action of this nature.

In some states immunity from suits against a sovereignty has, in certain instances, been waived and permission granted by legislatures for the prosecuting of such claims. Suits brought by express legislative consent are not in point here.

Some courts have interpreted similar provisions of state constitutions to be a waiver of the sovereignty from immunity from suit. See Rose v. State, Cal., 105 P.2d 302, 306; Chick Springs Water Co. v. State Highway Department, 159 S.C. 481, 157 S. E. 842; Morrison v. Clackamas County, 141 Ore. 564, 18 P.2d 814; Lage v. Pottawattamie County, 232 Iowa 944, 5 N.W.2d 161.

Courts have held that the total destruction of the value of real property as a necessary result in improving navigation because of the flooding of such land is a taking. United States v. Lynah, 188 U.S. 445, 23 S.Ct. 349, 47 L.Ed. 539; Morrison v. Clackamas County, supra; Clifford v. State, 20 Wash.2d 527, 148 P.2d 302.

A distinction, however, should be made between the damaging of property and the actual taking, and courts have held that the immunity from suit of a sovereign state cannot be circumvented by an eminent domain theory; and where the performance of some public function unrelated to a deliberate taking, damages another's property, such acts are mere tortious acts, and a suit against the sovereignty cannot be maintained. Hughes v. United States, 230 U.S. 24, 33 S.Ct. 1019, 57 L.Ed. 1374, 46 L.R.A., N.S., 624. Incidental or consequential damages to private property by a sovereign state or its agents acting in a governmental capacity have been held not to be a taking of property and no recovery can be had against the sovereignty. Keokuk & H.

Bridge Co. v. United States, 260 U.S. 125, 43 S.Ct. 37, 67 L.Ed. 165.

In Gearin v. Marion Co., 110 Or. 390, 223 P. 929, it was held that the destruction of a part of plaintiff's property through the washing away of his building by reason of a flow of logs, trees and stumps across his land caused by their release by defendant county from piers to which they were swept by a freshet, was not a taking of plaintiff's property.

"To entitle a person to compensation * * * prohibiting the taking of private property for public use * * * there must be an actual taking of property for public use, and not a mere injury to property without a taking." United States v. Louisville Bridge Co., D.C.Ky., 233 F. 270, 271, 277.

In Sanguinetti v. United States, 264 U.S. 146, 44 S.Ct. 264, 265, 68 L.Ed. 608, the Supreme Court of the United States held:

" * * * to create an enforceable liability against the government, it is at least necessary that the overflow be the direct result of the structure, and constitute an actual, permanent invasion of the land, amounting to an appropriation of and not merely an injury to the property. * * * If the case were one against a private individual, his liability, if any, would be a tort. There is no remedy in such case against the United States." See also, Danforth v. United States, 308 U.S. 271, 60 S. Ct. 231, 84 L.Ed. 240.

In the case of Dougherty v. Vidal, 37 N. Mex. 256, 21 P.2d 90, 92, the Supreme Court said:

"Both legally and practically we consider the state's immunity from suit too important a matter to be trifled with. 'A sovereign is exempt from suit, not because of any formal conception of obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends.' "

In the case of Davis v. State, 30 Idaho 137, 163 P. 373, 374, an irrigation ditch, under the control of the State allowed "large quantities of water to run on and across the plaintiff's land, doing the damage alleged." A general demurrer to the complaint was sustained. The court held the complaint did not state a cause of action against the State, and that in the absence of a statute or constitutional provision making the state as a proprietor liable for the acts of its servants, employees or agents, this court is without jurisdiction to grant any relief.

In the case of State v. Twin Falls-Salmon River Land and Water Company, 30 Idaho 41, 75, 166 P. 220, 233, this court said:

" * * * that the state in dealing with a Carey Act [43 U.S.C.A. §§ 641, 642], project acts by virtue of its sovereignty and not in the capacity of a private owner, and that the doctrine of estoppel cannot be invoked against a sovereign state."

In the case of Nordby v. Department of Public Works, 60 Idaho 475, 92 P.2d 789, 790, damages were claimed due to the destruction of crops and other property belonging to the plaintiff due to the burning of grass and weeds along the highway from which place it spread to the plaintiff's land. In sustaining a general demurrer, this court said:

"Is the State liable in damages for alleged negligent acts of its officers and employees performed while in the discharge of a mandatory, governmental duty?

"It is settled law in this state, in the absence of an express statute (as in Idaho) to that effect, the State is not liable for damages for negligent acts of its officers and employees performed in the discharge of a mandatory, governmental duty."

In Angelle v. State, 212 La. 1069, 34 So. 2d 321, 2 A.L.R.2d 666, the Supreme Court of Louisiana held:

"Destruction of property by fire originating from the negligent operation of disinfecting apparatus by agents of the state department of agriculture is not a taking or damaging for public purposes for which suit may be maintained against the state without legislative consent."

In the case before us for determination, it may be noted that the Department of Public Works in the construction of the bridge in question had no intention of appropriating any part of plaintiffs' land for a public use, and it is doubtful if the use for which plaintiffs contend their land was

taken is a use for which condemnation proceedings could be maintained.

The State has not used any part of plaintiffs' land for any purpose. Plaintiffs' right to the land was not invaded by any intentional act performed by one of the governmental agencies. Whatever the rule may be elsewhere, it has been held by this court that no recovery can be had for consequential damages. Idaho-Western Railway Co. v. Columbia Conference of Evangelical Lutheran Augustana Synod, 20 Idaho 568, 119 P. 60, 38 L.R.A., N.S., 497; Crane v. City of Harrison, 40 Idaho 229, 232 P. 578, 38 A.L.R. 15.

The method by which private property can be taken for a public use has been provided for by the legislature. Sec. 7-707, I. C. An assessment of damages is provided for by Sec. 7-711, I.C.

These sections necessarily contemplate the ousting of the owner from his possession, and the method is provided for determining the value of the land so taken and the damages to the remainder where that taken is part of a whole tract. Adjacent land, not a part of that taken under a condemnation proceedings and not owned by the person whose land is being condemned, might suffer consequential damages; but where the State or one of the governmental agencies of the State is condemning the land, no provision is provided for paying for such consequential damages.

There was no intention in this case to subject the property of the plaintiffs, or any part of it, to a public use, and no taking of the property resulted from the acts alleged. The acts done by the Department of Public Works were done without any intention to exercise the power of eminent domain. Unintentional damage by said agents, in this case the Department of Public Works, in carrying out a mere public function imposed by law is not a taking under the eminent domain constitutional provision.

The State Constitution expressly negatives the theory that a suit of this nature can be prosecuted in the district court. Sec. 10, of Art. 5 confers on the Supreme Court the power to grant recommendatory judgments for legislative action; and Sec. 18, of Art. 4, confers on the Board of Examiners the power to examine claims against the State and confers on the legislature the power to pass on claims rejected by the Board of Examiners. This remedy, if any, is exclusive.

In whatever form or on whatever theory the action may be based, the fact remains it is an action against the State, for which no constitutional or legislative consent has been given, and therefore the same cannot be maintained in the district court for lack of jurisdiction, and the State has not consented to be so sued.

The damages claimed in this case arise from no intentional act or acts of the State's agents, but were predicated on a trespass which depreciates or damages the value of the land and the remainder. If the claimants in this case are thus deprived of

184

their property, they would have a claim against the State specifically provided for by Sec. 10, Art. 5 of the Constitution for recommendatory judgment, but nowhere in the constitution or laws of the State is the district court, in which this action is brought, given jurisdiction to determine any such a matter. In the absence of a legislative act, the constitutional provision, supra, is exclusive. Davis v. State, supra; State ex rel. Hansen v. Parsons, 57 Idaho 775, 69 P.2d 788.

District courts of the State have neither inherent nor presumptive jurisdiction over the State of Idaho.

In order to hear and determine this matter jurisdiction must be conferred by constitutional or legislative act, and any court, in order to hear and determine a matter, must in the first instance, not only have jurisdiction of the parties, but of the subject matter of the action. District courts have been created and jurisdiction defined by constitutional and legislative act and such district courts cannot have jurisdiction over their creator.

In order to conclude, that the district court has jurisdiction the sovereignty rule supra must of necessity be annulled and set aside. Such a change in concept of governmental immunity would set a precedent of far reaching and now unforeseen claims against the State.

Further, a court cannot of its own motion assume jurisdiction, and cannot hear or determine claims over which it has no jurisdiction. Banbury v. Brailsford, 66 Idaho 262, 158 P.2d 826.

The judgment of the district court should be affirmed.